Herbert HARRIS et al.

v.

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL 1291,

and

Richard L. Askew, President of Local 1291.

Civ. A. No. 31377.

United States District Court
E. D. Pennsylvania.
Oct. 26, 1962.

Dorfman, Pechner, Sacks & Dorfman, by Harry Lore, Philadelphia, Pa., for plaintiffs.

Abraham E. Freedman, Philadelphia, Pa., for defendants.

VAN DUSEN, District Judge.

On May 2, 1962, plaintiffs (members of Local No. 1291 I. L. A.) filed a Complaint and a Motion For Preliminary Injunction (Document No. 2), claiming a denial of their rights, particularly the right to express their views, arguments and opinions upon union business at its meetings, as granted them by the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 411.[1]

Defendants then filed this Motion For Summary Judgment under Rule 56, F.R. Civ.P. (Document No. 3). This Motion was based on affidavits of Richard L. Askew, President of Local 1291, and James T. Moock, Vice-President of the I. L. A., AFL–CIO, assigned to the Philadelphia area, stating that no attempts to process the alleged grievances through

[1]. The pertinent language is in Pub.L. 86–257, Title 1, § 101, Sept. 14, 1959, 73 Stat. 522, 29 U.S.C.A. § 411:

"(a) (1) Equal rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

"(2) Freedom of speech and assembly. —Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations."

6

the existing union machinery had been made.

On May 15, 1962, D.C., 205 F.Supp. 45, the undersigned, after several days of testimony, entered an Order (Document No. 5) denying plaintiffs' Motion For Preliminary Injunction "without prejudice." This Order was based upon findings that plaintiffs had not exhausted the reasonable procedures available to them within the framework of the I. L. A. constitution before instituting legal proceedings against the union and its President.

On May 25, 1962, plaintiffs filed a Renewed Motion For Preliminary Injunction (Document No. 6). The Renewed Motion stated, inter alia, "That no reasonable hearing procedures exist within the Union Constitution or By-Laws for a redress of grievances occurring during the course of regular monthly union meetings of Local 1291." Defendants' Answer to the Renewed Motion (Document No. 7) stated, inter alia, that (1) reasonable grievance procedures do exist and (2) "Plaintiffs have not taken advantage of their internal remedies under the union constitution and bylaws although they are fully familiar with these procedures. The renewed motion is therefore defective on its face."

On July 16, 1962, D.C., 206 F.Supp. 731, the undersigned, after hearing additional testimony, entered an Order (Document No. 10) denying plaintiffs' Renewed Motion For Preliminary Injunction with prejudice.

■ In order to comply with the Labor-Management Reporting and Disclos-

ure Act,[2] the constitution of the I. L. A. provides a complete set of rules for the orderly adjudication of all grievances and appeals. The pertinent sections of the I. L. A. constitution (attached to Document No. 3) are found in Article XIX, "Appeals." Sections 1 through 5 provide the means and methods for taking an appeal. Section 6 (page 40) states:

"Section 6. Whenever a decision is initially made, other than by the Executive Council or the Convention, an appellant, seeking to exhaust his remedies in accordance with the provisions of Section 5 of this Article, shall, notwithstanding the pendancy of any intermediate appeals, file an appeal with the Executive Council within ninety (90) days after having been served with a copy of the decision appealed from. If no Regular or Special Convention of the I. L. A. is held before the expiration of four (4) months of the date of the decision appealed from, the decision of the Executive Council on appeal shall be final and binding. If a Regular or Special Convention of the I. L. A. is held before the expiration of four (4) months of the date of the decision appealed from, then the final appeal must be taken to such Regular or Special Convention and its decision shall be final and binding, provided, however, that in all such cases appeals must first be taken to the membership of a Local Union and then to the Execu-

---

2. 29 U.S.C.A. § 411(a) (4) provides:
"Protection of the right to sue.—No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legis-

lator: *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: *And provided further*, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition."

tive Council. If such Convention is held so close to the date of the decision appealed from as to preclude intermediate appeals such appeal must be taken to the Executive Council and finally to the Convention."

As noted in the Order of May 15, 1962 (Document No. 5, page 3), " * * * Bey was notified of the appeal procedure by letter of April 9, 1962 (P–3), * * *." See, also, footnote 2 of Document No. 5.

Plaintiffs' contention that "no reasonable hearing procedures exist within the Union Constitution or By-Laws for a redress of grievances occurring during the course of regular monthly union meetings of Local 1291" is rejected.

Excerpts from the transcript, illustrating plaintiffs' failure to exhaust their available internal union remedies, are contained in Exhibit A to this Memorandum. The testimony makes clear that copies of the Constitution and By-Laws were available to anyone who requested them.

A careful reading of Article XIX of the I. L. A. Constitution indicates basic compliance with 29 U.S.C.A. § 411(a) (4).

The testimony discloses that plaintiffs failed to exhaust their internal remedies. See Document No. 5 and, also, Tomko v. Hilbert, 40 Labor Cases 71,245 (par. 66,757) (W.D.Pa.1960), aff'd. on other grounds, 288 F.2d 625 (3rd Cir. 1961), and Rizzo v. Ammond, 182 F.Supp. 456 (D.N.J.1960), holding that members of a union, in accepting membership in the international and local, must be deemed to have subjected themselves to the provisions of the constitution and by-laws of the international, wherein remedies provided by the international constitution must be exhausted before the jurisdiction of a court may be involved under chapter II of Title 29 U.S.C.A.

Plaintiffs cite Johnson v. Local Union No. 58, Inter. Broth. of Elec. Workers, 181 F.Supp. 734, at page 737 (E.D.Mich. 1960), for the proposition that there may be times when 29 U.S.C.A. § 411(a) (4) (exhaustion of union remedies not exceeding four months) does not have to be followed. In this opinion, Judge Freeman states:

"The plaintiffs admit that they did not avail themselves of this procedure to process their charges, but contend that the procedure provided for is 'unreasonable' for purposes of compliance with § 101(a) (4). *This court is inclined to accept that contention in view of the multiple appellate agencies, their infrequent meetings and also in view of the fact that the constitution does not provide time limits for decision by such trial and appellate agencies.* * * * this court finds that the hearing procedures provided for by the Union are 'unreasonable' for purposes of § 101(a) (4) and consequently did not need to be complied with." (Emphasis supplied.)

The underlined language does not apply to the situation presented by this record.

While there may be occasions when the union's constitution need not be followed for failure to comply with § 411 (a) (4), nevertheless, the courts should be cautious in disregarding instruments of union government that have been drawn in a serious effort to comply with the spirit of the applicable statute.

As the record now stands in its present posture, the trial judge does not find the union procedure "unreasonable" and will not allow plaintiffs the privilege of avoiding the Constitution because of mere "possible long delays in processing a charge," where there have been no attempts to exhaust the available remedies nor any showing that such attempts would be in vain.[3]

3. See Detroy v. American Guild of Variety Artists, 286 F.2d 75, 78 (2nd Cir. 1961), where Chief Judge Lumbard stated:
    "We therefore construe the statute

[29 U.S.C.A. § 411(a) (4)] to mean that a member of a labor union who attempts to institute proceedings before a court or an administrative agency may be re-

Rule 56, F.R.Civ.P. (summary judgment) provides:

"(c) * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Professor Moore states in Vol. 6 (2nd Ed., 1961), page 2028:

"The summary judgment procedure prescribed in Rule 56 is a procedural device for promptly disposing of actions in which there is no genuine issue as to any material fact. In many cases there is no genuine issue of fact, although such an issue is raised by the formal pleadings. The purpose of Rule 56 is to eliminate a trial in such cases, since a trial is unnecessary and results in delay and expense which may operate to defeat in whole or in part the recovery of a just claim or the expeditious termination of an action because of a meritorious defense that is factually indisputable."

See, also, Taxin v. Food Fair Stores, Inc., 287 F.2d 448 (3rd Cir. 1961); United States for Use of Kolton v. Halpern, 260 F.2d 590 (3rd Cir. 1958); Fiumara v. Texaco, Inc., 204 F.Supp. 544, 554 (E.D.Pa.1962), and cases there cited.

Upon full consideration of (1) the pleadings, (2) supporting affidavits, (3) the testimony produced at two hearings on Motions For Preliminary Injunction, and (4) briefs of counsel, the undersigned is of the opinion that no genuine issue as to a material fact exists regarding the exhaustion of union remedies[4] and that defendants are entitled to grant of their Motion for Summary Judgment as a matter of law.

Plaintiffs' contentions[5] that genuine issues as to material facts exist is without merit upon consideration of the instant issue, to wit, the exhaustion of reasonable union remedies.

Plaintiffs cite Afran Transport Company v. National Maritime Union, 175 F.Supp. 285 (S.D.N.Y.1959), for the proposition that " * * * the mere fact that plaintiff's motion for preliminary injunction was denied is not *per se* a ground for granting defendants' motion for a summary judgment" (emphasis supplied by counsel). This rule is correct. The undersigned is not granting summary judgment merely because plaintiffs were unsuccessful in their motion for preliminary injunction. The judgment has been granted because no substantial issue of fact exists requiring a trial as to the exhaustion of reasonable, internal, union remedies. See authorities cited above at page 7.

The filing of this Memorandum and Order has been delayed until the exact wording of the testimony given at the hearings last May became available (see Documents Nos. 16, 17 and 19, filed 10/23/62, excerpts from which are included in Exhibit A).[6]

ORDER

AND NOW, October 26, 1962, IT IS ORDERED that the defendants' motion

quired *by that court or agency* to exhaust internal remedies of less than four months' duration before invoking outside assistance."

4. It is noted that plaintiffs did not submit counter-affidavits concerning their failure to exhaust existing and available union remedies.

5. Plaintiffs also speak of the undersigned's use of the word "confusion" in his opinion concerning 1291's meetings. It should be noted that the testimony reveals the

meetings have been conducted properly (though not perfectly, which is seldom the case), fairly, and in accordance with the basic rules of parliamentary procedure. Of more significance is the fact that these contentions are not material, since it is clear that plaintiffs failed to exhaust the union procedures.

6. The plaintiffs' Memorandum Contra Motion For Summary Judgment has been filed as Document No. 20 and defendants' Memorandum in support of that Motion has been filed as Document No. 11.

for summary judgment (Document No. 3) is granted and judgment is entered for The International Longshoremen's Association, Local No. 1291, and Richard L. Askew, President of Local No. 1291, defendants, and against Herbert Harris, et al., plaintiffs.

EXHIBIT A TO MEMORANDUM OF OCTOBER 26, 1962, IN HARRIS, ET AL. V. I. L. A., LOCAL NO. 1291, ET AL., CIVIL ACTION NO. 31377

As to Mr. Bey's attendance at I. L. A., Local 1291, meetings, he stated:

"I would say roughly 80 per cent of the meetings I have attended, from 75 to 80 per cent of the meetings." (N.T. 19)[a]

As to Bey's knowledge of the Constitution:

"Q So that you did have a copy of the by-laws and Constitution available to you, did you not?

"A At that time.

"THE COURT: When was that, do you remember?

"THE WITNESS: Oh, it is about '54, I guess; '54—say about '54, '55.

"By Mr. FREEDMAN:

"Q As a matter of fact, Mr. Bey, you even knew all about the by-laws as early as 1953, did you not?

"A Yes. I didn't know about them. I didn't know them thoroughly, *but I knew of them.*" (N. T. 88–89) (Emphasis supplied.)

Mr. Bey sent a letter to Mr. Moock, of I. L. A., dated July 19, 1953. Questioned as to this letter, Mr. Bey stated as follows:

"Q Now, Mr. Bey, would you turn to the second page of this document and read the top paragraph, please.

"A *'In reading the by-laws I notice* * * *

"Q So that as of July 19, 1953, you had read the by-laws, had you not?

"A Read the by-laws, yes. I did not have possession of the by-laws, and I didn't know the by-laws, but I had read them." (N. T. 90) (Emphasis supplied.)

The above testimony illustrates Bey's knowledge and diligence in studying the by-laws and Constitution.

Concerning any appeal from a ruling of the chair, the transcript shows the following:

"Q Did you file any written complaint or appeal to any other department of the Union—to any department of the Union?

[Objection; overruled by the court.]

"THE WITNESS: Merely making an appeal to the motion on the floor, that's all. I did not file a written complaint at that time.

"THE COURT: Did you file one later?

"THE WITNESS: Not a written appeal, no." (N. T. 93)

On March 28, 1962, Mr. Bey wrote a letter to Captain Bradley (I.L.A.). He received a reply telling him he could go to the District Council (N. T. 95–97) with his appeal. Bey was asked:

"Q Did you at any time file any written charge or appeal in the local Union from any grievance that you might have had?

* * * * *

"A * * * No." (N. T. 97) Again, at N. T. 101:

"Q * * * I have asked you whether you filed any written appeal in the local Union as required by the Constitution?

* * * * *

"A No, I did not.

"Q You did not file any in the Executive Council of the International Union, which is the next step— or, in the District; over and above the District Council there is another

a. References to notes of testimony are to Documents Nos. 16 and 17, being transcript of May 8–10, 1962, hearings, unless otherwise specified.

district, Atlantic Coast District; you know that, too, don't you?

"A   Yes, I know that."

At N. T. 103–4 the following appears:

"Q   All right.   Now, did you ever file any appeal with the Executive Council of the International Union?

"A   No.   Only to Bradley.

"Q   Now, when you wrote to Mr. Bradley, he replied to you under date of April 9?

"A   Yes.

"Q   As reflected on this exhibit, P–3,—

"A   Yes.

"Q   —which is the letter that he sent back to you?

"A   Yes.

"Q   And he outlined in there the various steps which you had available to you, did he not?

"A   Yes.

"Q   And he outlined in this letter each one of the steps that I just went through, isn't that correct?

"A   Yes.

"Q   Did you take any of those steps?

"A   No."

The transcript shows that Mr. Moock, I. L. A. Vice-President, asked Bey if he would appeal under Captain Bradley's letter.   He answered he would not.   With reference to this letter, Mr. Moock stated:

"I then made it a point at the end of the meeting, I went over and asked Mr. Bey, I says, 'I have got this package from Bradley.' I said, 'He has requested me to send them back to him.   I want to ask you a question:   Are you making a charge against the local?'

"And he says, 'No, I am not.' " (N. T. 259)

"And I says, 'The very last part, which is—' which was number four under the itemized list that Bradley sent me—I says, 'He has told you what your different avenues of appeal are.'   And I says, 'I again ask you, are you making any charges?'

"And he says, 'No, I am not.' " (N. T. 260) [b]

**b.**  See, also, N. T. 302, on cross-examination, and N. T. 370, were President Askew stated that Bey never took an appeal from any of his rulings.   Also see N. T. 537–538, where Askew told Bey of his right to appeal at a meeting.