Herbert **HARRIS** et al., Appellants,

v.

The **INTERNATIONAL LONGSHORE-MEN'S ASSOCIATION, LOCAL NO. 1291**, and Richard L. Askew, President of Local No. 1291.

No. 14213.

United States Court of Appeals
Third Circuit.

Argued April 23, 1963.

Decided Aug. 5, 1963.

Harry Lore, Philadelphia, Pa., for appellants.

Abraham E. Freedman, Philadelphia, Pa. (Wilfred F. Lorry, Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellees.

Before BIGGS, Chief Judge, and HASTIE and GANEY, Circuit Judges.

HASTIE, Circuit Judge.

The question on this appeal is whether this suit by members in good standing of Local 1291 of the International Longshoremen's Association against the local and its president for alleged violations of Title I, the "Bill of Rights", of the Labor-Management Reporting and Disclosure Act of 1959, 73 Stat. 522, 29 U.S.C. §§ 411–415, is premature because the plaintiffs have not first sought relief within the union. Answering this question in the affirmative, 210 F.Supp. 4, the district court granted the defendants' motion for summary judgment, and the plaintiffs have appealed.

Facts relevant to various issues were developed in affidavits annexed to the motion for summary judgment and in extensive uncontradicted testimony taken at hearings on plaintiffs' unsuccessful motions for preliminary injunctions. However, the opinion below in support of the granting of summary judgment unambiguously confined the issue sub judice to the exhaustion of internal remedies. See 210 F.Supp. at 8. Accordingly, we shall consider only that issue, leaving the merits of the plaintiffs' grievance for future determination whether within the association or through future litigation.

A union member's obligation to resort to internal remedies before suing his union is based upon the provision of section 101(a) (4) of the L.M.R.D.A., 29 U.S.C. § 411(a) (4), that:

"No labor organization shall limit the right of any member thereof to institute an action in any court, * * * irrespective of whether or not the labor organization or its officers are named as defendants * * *: *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof * * *."

In the present case, the relevant union requirement is contained in article XIX, section 5, of the "Constitution and Rules of Order of International Longshoremen's Association, As amended at the 39th Convention * * * July 13–16, 1959, and Executive Council Meetings of October 28, 1959 and December 1, 1959". See Sheridan v. United Bd. of Carpenters, 3d Cir. 1962, 306 F.2d 152, 159–160 (concurring opinion). That section provides that:

> "No member * * * shall institute any civil action * * * against the I.L.A., any of its Local Unions, * * * or any officer * * * on account of any controversy for which a remedy by trial or appeal is provided for in this Constitution, unless and until he has first exhausted all such remedies of trial and appeal."

The plaintiffs have taken no steps to invoke any of the remedies established by the I.L.A. constitution. They contend, however, that they may bypass these remedies and institute this action immediately because (1) the procedures set forth in the constitution are unreasonable in that they are confusing and contradictory; (2) the procedures give no assurance of final disposition of a complaint within the four-month period contemplated by the Act; and (3) the existence of the procedures was unknown to the plaintiffs when this action was commenced.

The complaint alleged that the defendant president's wilful misconduct of union meetings has deprived the plaintiffs of their right to participate effectively in such meetings.[1] Specifically, the plaintiffs alleged that the defendant president, at various times, knowingly and wilfully made erroneous parliamentary rulings, permitted conversations while members were recognized to speak, vilified one of the plaintiffs when he attempted to address a meeting, refused to permit debate on certain debatable questions, and declined to entertain appeals from his rulings.

Such intentional departures from the basic rules of orderly, democratic parliamentary procedure by the president of the local union, if proved, would constitute violations not only of the L.M.R.D.A., but also of the local president's official duty to enforce the rules of order of the I.L.A. constitution. See article XIII, section 4. In such a case, article XVIII of the constitution provides an appropriate internal remedy.

Section 1(b) of article XVIII provides that "any * * * officer * * * shall be subject to discipline who is found guilty * * * of violating any provision of this Constitution". In section 1(a) "discipline" is defined broadly enough to encompass relief for union members whose right to participate in union meetings has been abridged by the illegal conduct of a local president. Disciplinary proceedings may be initiated against an officer of a local union by "any member" of the union filing charges with the Executive Board of the local union, the District Council or District organization, or the Executive Council of the international union. Any of these bodies has jurisdiction to entertain such proceedings. Sections 3 to 5 of article XVIII set forth rules governing the conduct of such proceedings. Section 6 provides that "appeals from decisions [in disciplinary cases] * * * may be

---

1. Section 101(a), paragraphs (1) and (2) of the L.M.R.D.A., 29 U.S.C. §§ 411(a) (1), (2), provide as follows:

"(1) *Equal rights.*—Every member of a labor organization shall have equal rights and privileges within such organization * * * to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

"(2) *Freedom of speech and assembly.*—Every member of any labor organization shall have the right * * * to express at meetings of the labor organization his views, * * * upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings * * *."

taken * * * by the accused or by the person filing the charge".

■ The plaintiffs do not seriously question that such disciplinary proceedings under the I.L.A. constitution could give them the relief which they seek.[2] Instances of possible confusion suggested by the plaintiffs do not negate the substantial probability that if they had attempted, in good faith, to follow the procedures established in those articles, they would have received an appropriate hearing of their grievances by a union tribunal empowered to grant them relief. We think the prescribed hearing procedures meet the standard of reasonableness stated in section 101(a) (4) of the L.M.R.D.A. See Edsberg v. Local 12, Int'l Union of Operating Engineers, 9th Cir. 1962, 300 F.2d 785.

But even if adequate provision is made for an initial disposition of a complaint, the plaintiffs contend that the multiplicity of appellate agencies renders the provisions for appeals unreasonable. Cf. Johnson v. Local 58, Int'l. Bd. of Elec. Workers, E.D.Mich.1960, 181 F.Supp. 734, 737. Article XIX, section 1, does enumerate several levels of the I.L.A. through which "appeals may be taken from any decision made under Article XVIII and from any action, failure to act or decision in the exercise of the original or appellate jurisdiction provided for in this Constitution". But that article does not make successive resort to each of these agencies mandatory. Any higher one may preempt the jurisdiction of a lower one. See section 2. And it is not necessary for a member who intends to institute legal proceedings against the union or one of its officers to proceed through any intermediate appellate agency. Indeed, section 6 of article XIX directs that a member seeking to exhaust his remedies in accordance with the provisions of section 5, quoted above, forego intermediate appeals and file his appeal directly with the Executive Council of the international union, whose decision shall be final. Additional appellate procedures are required when a convention of the international union is imminent. But there is no evidence that such a convention was scheduled for any of the years during which the plaintiffs' alleged grievances arose. In the absence of such evidence, the plaintiffs could not be penalized for failing to take steps necessary to securing review by the convention. Similarly, the existence of procedures which they are not required to follow does not make procedures which they are required to follow unreasonable as applied to them.

Taken as a whole, the provisions of articles XVIII and XIX of the I.L.A. constitution fairly indicate reasonable steps which should be taken by an aggrieved member seeking to exhaust internal remedies prior to bringing suit against the union.

■ The plaintiffs also attempt to excuse their failure to resort to the procedures established by the I.L.A. constitution on the ground that a final decision may well not have been obtainable within four months of the initiation of a proceeding. The undisputed facts establish that, although there was no unqualified assurance of a final decision within four months, the plaintiffs could reasonably have expected to receive at least an initial decision within the specified period.[3]

2. Congress has already surveyed what plaintiffs' counsel calls "the hazardous road of an accuser [seeking] to secure a remedy within his union", and has enacted protections in the L.M.R.D.A. See, e. g., Salzhandler v. Caputo, 2d Cir. 1963, 316 F.2d 445.

3. The record does not contain complete information about the frequency of meetings of the various agencies empowered to act upon disciplinary complaints against officers. Each, however, is subject to the call of its president. The By-Laws For Government of the defendant Local 1291, clause 15(d), require that the trial of charges against any member "shall be held as soon as possible and without unnecessary delay". It was testified without contradiction that the Philadelphia District Council meets monthly. It was also testified that the Executive Council of the international union customarily decides appeals on the same

Such a decision might have granted them the relief they sought. Nevertheless, the plaintiffs contend that they were privileged to avoid the internal procedures altogether. We do not agree.

■ The proviso of section 101(a)(4), that a "member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time)", reflects an effort to encourage mature, democratic self-government of labor organizations through the development of internal procedures for the correction of abuses by union officials and at the same time to provide reasonably expeditious judicial relief to union members who have been denied the fundamental rights guaranteed by Title I of the L.M.R.D.A. Typical statements in Congress of these competing policies may be found in 2 NLRB, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959 [hereinafter cited as Leg.Hist.] 1106 (Senator McClellan), 1667 (Representative McCormack). The common objective and understanding seems to be expressed in the following statement by Senator Kennedy, one of the Senate conferees:

> "The basic intent and purpose of the provision was to insure the right of a union member to resort to the courts, administrative agencies, and legislatures without interference or frustration of that right by a labor organization. On the other hand, it was not, and is not, the purpose of the law to eliminate existing grievance procedures established by union constitutions for redress of alleged violation of their internal governing laws." 2 Leg.Hist. 1432.

■ On the one hand, it would not promote the stated purposes of Congress to insist that a union member pursue an internal remedy which could not, by its very nature, result in a decision within the period chosen by Congress as a reasonable norm. See Carroll v. Associated

Musicians, S.D.N.Y., Jan. 15, 1963, 46 CCH Lab.Cas. 28438, 28445 (member not required to appeal to union convention scheduled to convene more than four months after his expulsion from membership); cf. Parks v. Int'l. Bd. of Elec. Workers, 4th Cir. 1963, 314 F.2d 886, 925. On the other, it would all but nullify any requirement of resort to internal remedies if union members were permitted to ignore reasonable procedures established by unions for internal adjustment of grievances because of mere uncertainty whether a final decision could or would be reached within the statutory period. As long as there is likelihood that some decision will be forthcoming within the four-month period, and the aggrieved member has not shown that he will be harmed by being required to seek such a decision, cf. Detroy v. American Guild of Variety Artists, 2d Cir. 1961, 286 F.2d 75, cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388, the purposes of the act require that judicial intervention be withheld until the member has given the internal grievance procedures the chance to operate which Congress deemed to be reasonable. See Sheridan v. United Bd. of Carpenters, supra, at 160; Deluhery v. Marine Cooks Union, S.D.Cal.1962, 211 F.Supp. 529; Acevedo v. Bookbinders Local 25, S.D.N.Y.1961, 196 F.Supp. 308.

The foregoing interpretation is supported by the legislative history of section 101(a)(4). Although there was no committee report on the hastily-drafted Landrum-Griffin Bill (H.R. 8400, 86th Cong., 1st Sess.), section 101(a)(4) of which was enacted into law without change, the language of the so-called Elliott Bill (H.R. 8342), as reported by the House Committee on Education and Labor, did provide a clear answer to the problem raised by the present case. As explained by the committee report, that bill provided that:

> "A member whose rights under title I of the committee bill have

day that they are heard. There is nothing in the record which would indicate that any of the union agencies authorized

to act on the plaintiffs' complaint would neglect to dispose of charges against a local union officer promptly.

been violated, who has exhausted the reasonable remedies available under the constitution and bylaws of the labor organization and of any national or international labor organization with which such labor organization is affiliated, or *has diligently pursued such available remedies without obtaining a final decision within 6 calendar months after their being invoked*, may bring a civil action * * *." H.R.Rep.No. 741, 86th Cong., 1st Sess., 1959, p. 7; 1 Leg.Hist. 765, U.S.Code Congressional and Administrative News 1959, p. 2429. (Emphasis added).

A statement of Representative Landrum indicates that section 101(a) (4) of the Landrum-Griffin Bill was intended to accomplish the same result:

"The committee bill would require that union members 'exhaust reasonable remedies' within a 6-month period, which are available under the union's constitution and bylaws. Only then can the member subsequently institute a civil action for relief from infringement of his rights. * * * The bill we propose as a substitute *would permit a member to seek immediate redress of his basic rights in the courts after 4 months without the further delaying and dilatory route of exhausting union procedures."* 2 Leg.Hist. 1518. (Emphasis added).

Finally, Representative Griffin, summarizing the work of the Conference Committee which approved the Landrum-Griffin version of section 101(a) (4), reported that:

"[The] Senate bill would require a union member to *exhaust hearing procedures within the union for a period of 6 months* before instituting legal or administrative proceedings against the union or its officers. [The] House provisions required only 4 months." 2 Leg.Hist. 1712. (Emphasis added).

See also 2 Leg.Hist. 1295 (Senator McClellan), 1630 (Representative Riehl-

man), 1811 (Representative Griffin). Throughout, the emphasis is upon a member's seeking or actually receiving internal relief during the statutory period, not upon the establishment of procedures which shall guarantee a final decision within that period before a member may be required to utilize them.

■ In the present case, the plaintiffs have instituted no formal proceedings whereby the I.L.A. might have corrected the abuses which they allege. Since there is substantial likelihood that corrective action would be forthcoming within the statutory period if the plaintiffs proved their charges before a union tribunal, and since there is no showing that the plaintiffs would be harmed if required to follow the procedures established by the I.L.A. constitution, resort to the courts is precluded pending four months' pursuit of an internal remedy.

■ The last of the plaintiffs' contentions requiring discussion is that they cannot be held responsible for failing to utilize the procedures established by the I.L.A. constitution because the existence of these procedures was unknown to them when this action was commenced. This contention, made with particular reference to the plaintiff Bey, who is apparently the moving spirit of the present litigation, is advanced despite Bey's admission that he was familiar with the I.L.A. constitution before 1959 and, specifically, that he was aware at that time of the existence of internal procedures for the adjudication of grievances. There is nothing in the record to show how the I.L.A. constitution was amended in 1959. Nor is there anything which indicates that it would have been futile for Bey to make a good faith effort to follow the union hearing procedures as he understood them. In addition, there is undisputed testimony by two union officials that copies of the present I.L.A. constitution and the local by-laws have been widely distributed among the membership of the defendant union. The undisputed facts and the inferences which may be drawn from them point compel-

lingly to the conclusion that Bey's failure to resort to formal internal procedures was a product not of ignorance of union grievance procedure but of preference for the judicial forum.[4] At least during the specified four-month period, section 101(a) (4) does not permit such an election.

The dispositive conclusion reached by the district court was legally correct on the basis of undisputed facts and justified the granting of summary judgment.

The judgment will be affirmed.

**4.** Shortly before the institution of this litigation, the plaintiff Bey denied to a union official that he intended to prefer internal charges concerning the very occurrences which were later alleged in the complaint in this action.