**LOCAL LODGE #455, INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIPBUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO, et al., Appellants,**

v.

**Paul TERRY et al., Appellees.**

**No. 24387.**

United States Court of Appeals
Fifth Circuit.

July 18, 1968.

John J. Blake, Kansas City, Kan., Donald E. Brutkiewicz, Mobile, Ala., for appellants.

C. V. Stelzenmuller, Birmingham, Ala., for appellees, Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., of counsel.

Before COLEMAN and GOLDBERG, Circuit Judges, and HANNAY, District Judge.

GOLDBERG, Circuit Judge:

We are asked to condemn the oppressive actions of a union, which were perpetrated not against management, but against several of the union's own members. The district court entered judg-

ment on jury verdicts which had found such oppression. We affirm.

During 1964 the plaintiffs, union members, were hired by Davis Constructors to expand certain plant facilities, in Decatur, Alabama. Although Davis Constructors had no union contract, the plaintiffs began work apparently with the approval of their local, Local 455 of the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers.

On January 4, 1966, another union, Local 558 of the International Brotherhood of Electrical Workers, set up a picket line at the gate of the Davis construction site. At approximately the same time, members of Local 455 informed the plaintiffs that they were not to cross the picket line, that the job was off limits, and that they were to leave the job. The plaintiffs continued working despite these oral instructions. On February 16, 1965, Local 455 served a charge on the plaintiffs and others, alleging that their continued working was in violation of certain general provisions in the union's constitution and by-laws. (No provision in either the constitution or by-laws prohibits crossing picket lines *per se.*) On March 6, 1965, Local 455 conducted a hearing on such charges in Sheffield, Alabama. Only four of the plaintiffs, Paul Terry, Vester T. Dollar, Densil L. Drane, and John W. Hughes, appeared at the hearing. All of the plaintiffs were

found guilty. Raymond J. Clark was fined $25. Each of the other plaintiffs was fined $100 plus $25 a week as long as he continued to work for Davis Constructors.

Paul Terry filed an appeal to the union's International Executive Council, which sits in Kansas City, Kansas. The decision of that appellate body, delivered in the form of a certified letter to Terry, was a model of brevity: "The appeal is denied and the findings and decision of the Trial Body are sustained." Russell D. Alexander and Densil L. Drane also appealed to the International Executive Council, but their appeals were dismissed for failure to meet the fifteen-day time limit. (Apparently, the appeals were filed in Alabama within fifteen days and were received by the appellate council shortly thereafter.) None of the other plaintiffs attempted an appeal.

On July 30, 1965, the plaintiffs filed suit in federal court seeking damages and other appropriate relief for improper disciplinary action by both Local 455 and the International. 29 U.S.C. §§ 411(a) (5) and 412.[1] The district court allowed a jury trial and conducted full trial proceedings, after which the jury awarded compensatory damages of $500.00 to each plaintiff. The district court granted judgment on the verdict and denied the local's motion for judgment notwithstanding the verdict.

---

1. § 411. Bill of rights; constitution and bylaws of labor organizations

      \*     \*     \*     \*     \*

(5) Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

(b) Any provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of this section shall be of no

force or effect. Pub.L. 86–257, Title I, § 101, Sept. 14, 1959, 73 Stat. 522.

§ 412. Civil action for infringement of rights; jurisdiction

Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located. Pub.L. 86–257, Title I, § 102, Sept. 14, 1959, 73 Stat. 523.

## I.

■ We first must dispose of the union's claim that court action would unduly preempt the union's right to solve its own internal problems. If we were to follow this argument to the letter, we would have to dismiss all claims except those of Terry for failure to exhaust internal remedies. The union, of course, relies on the *proviso* to Section 101(a) (4) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a) (4):

"No labor organization shall limit the right of any member thereof to institute an action in any court * * *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations * * *."

Clearly, this *proviso* is one of comity, and judicial abstention is to be temporary, tentative, and conditional. Detroy v. American Guild of Variety Artists, 2 Cir. 1961, 286 F.2d 75, cert. den., 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388. The union acknowledges the *De-*

*troy* case as leading authority in this area but cites an equally extensive analysis, with a resultant denial of judicial relief. Harris v. International Longshoremen's Association, Local No. 1291, 3 Cir. 1963, 321 F.2d 801. The following portion of the *Harris* opinion quite clearly distinguishes the alternatives open to that Court from the alternatives at bar:

"Since there is substantial likelihood that corrective action would be forthcoming within the statutory period if the plaintiffs proved their charges before a union tribunal, and since there is no showing that the plaintiffs would be harmed if required to follow the procedures established by the I. L. A. constitution, resort to the courts is precluded pending four month's pursuit of an internal remedy." 321 F.2d at 806.

■ The experiences of Terry, Alexander, and Drane assure us that judicial remedies are the only forms of relief open to the plaintiffs. It is quite obvious from the record that the Trial Body of Local 455 did not even know whether the actions which the local had demanded of the plaintiffs would have been legal.[2]

2. We quote from the plaintiffs' original complaint:

"The sole prosecution witness was one Phillips, who gave conclusory testimony that the picket line was 'legal'; plaintiff Dollar then testified that he crossed the picket line but questioned its legality; the Chairman of the Trial Committee, also the President of Local 455, J. W. Wilson, then stated:

'I will say this: to the best of my knowledge it was a legal picket line.' Plaintiff Drane testified he crossed the picket line, then asked:

'Why is it any more legal than the ones we have been made to cross, or either lose our job, ever which one we prefer?'

The Trial Committee Chairman Wilson replied:

'Brother Drane, *that is something I am not prepared to answer at this time, although I know what you have reference to.*'

Thus, the presiding officer declared his opinion to be that the picket line was legal, although he admitted he did not know what it was that made a picket line legal or illegal. Plaintiff Terry then testified that he did not think it was a legal picket line, that he could not see it was any different from ones he had been made to cross several times. Whereupon prosecution witness Phillips made the following speech to explain the picket line's legality:

'I would like to say that it is a legal picket line. It is an informational picket line; and I can assure you it is legal or the attorneys for Davis Constructors, Chemstrand, would have had an injunction long before now, and the picket would have had to come down. For if it is illegal, they could get an injunction. They have not tried for an injunction, because they cannot get an injunction when you have a legal picket line. * * * It is a legal picket line, Mr. Chairman. Informational picket line. * * * And it definitely is a legal picket line, informational picket line.'

This display of indecision, never explained by the union's counsel by brief or oral

Moreover, as we shall hold, regardless of the legality of the picket line, the fine was completely without merit because it violated a specific provision of the union's own constitution. Instead of addressing itself to either of these issues, the International Executive Council summarily dismissed Terry's appeal and refused to consider the appeals of Alexander and Drane because of petty technicalities. The union's handling of this case leaves no suggestion that it was affording its members "reasonable hearing procedures." Let us proceed with the merits of this case.

## II.

The plaintiffs attack the union disciplinary action on two fronts. The first attack utilizes the regulation of concerted activity against a non-union employer under the National Labor Relations Act. 29 U.S.C. §§ 158(b) (4) (B), 158(b) (4) (D), and 187. See also 29 U.S.C. §§ 158(b) (7) (C) and 186(c) (5) (B). The plaintiffs contend that if the picket line was one which they could be compelled to respect, not merely "informational," it was an illegal picket (and therefore not one which they could be compelled to respect). The second attack stresses the specifics of internal union guarantees, through its own constitution, in the area of strikes and work stoppages. Though intrigued by the first approach, we shall follow Judge Wisdom's lead in a case involving similar alternatives, Allen v. International Alliance of Theatrical, Stage Employees, 5 Cir. 1964, 338 F.2d 309, 315, and "takes a more narrow view of this case."[3]

The plaintiffs were fined for violating the following provisions of the union's constitution and by-laws:

*International Constitution, Art. XXI, § 1, paragraphs (d), (j) and (k):*

(d) engaging in any activity or course of conduct contrary to or detrimental to the welfare or best interest of the International Brotherhood or of a subordinate body;

\* \* \* \* \* \*

(j) engaging in or fomenting any acts or course of conduct which are inconsistent with the duties, obligations and fealty of the members of a trade union and which violate sound trade union principles or which constitute a breach of any collective bargaining agreement;

(k) failure to exercise responsibility toward the International Brotherhood as an institution or engaging in conduct which would interfere with the International Brotherhood's performance of its obligations;

*District #57 By-Laws, Art. XII, § 1, paragraph (d):*

(d) Refusal or failure to perform any duty or obligation imposed by these By-Laws; the established policies of the International Brotherhood; the valid decisions and directives of any officer or officers thereof; or the valid decisions of the International Convention.

In contrast to these general sanctions, however, Article XX, Section 1 of the union's constitution, provides union members the specific guarantee of a

---

argument, is not improved by the testimony in district court of the union's sole witness, Clyde R. Caldwell, Business Manager for Local 455, who insisted that the picket was legal but seemed to deny that it was informational.

3. Before turning to the narrow view, we feel a need to comment on the presentation of the broader, statutory problem to both our Court and the Court below. One theoretical distinction between a judicial decision and obiter dicta is, in the latter, a lack of "argument or full con-

sideration of the point." Lawson v. United States, 1949, 85 U.S.App.D.C. 167, 176 F.2d 49, 51, cert. den., 339 U.S. 934, 70 S.Ct. 663, 94 L.Ed. 1379. The union's handling of this case demonstrates just how theoretical that distinction may often be. The plaintiffs presented the statutory argument in their original complaint, filed June 30, 1965, in the district court. The union has failed to join issue on this most serious problem not only throughout the proceedings below but also in its appellate brief.

strike vote before any mandatory "strike or other work stoppage":

"It shall be the duty of any subordinate body of the International Brotherhood which is contemplating engaging in a strike or other work stoppage to conduct a strike vote prior to the calling of any such strike. * * * Only those members who are directly involved or affected by the strike shall be entitled to vote. * * * It shall take a two-thirds vote * * * to obtain an authorization. for a strike. No strike shall be called which is in violation of an existing collective bargaining agreement or which is otherwise in violation of the law."

The union does not contend that it complied with Article XX, Section 1, before ordering the plaintiffs to stop work. Rather, it has consistently maintained, as stated in its appellate brief, that "that section * * * [Article XX, Section 1] pertains only to those cases where there is a strike and * * * the observance of a picket line is by no means a strike as that particular section refers to." No authority is cited for the above proposition. The union is content to add merely, and also without supporting authority: "It is further Appellants' contention that the fines were legally imposed as it is well established that *all good union men* observe legal picket lines established by their own organization and others." (Emphasis added.)

■ Our search for jurisprudential aid need travel no further than a recent case by this Court. International Brotherhood of Boilermakers, etc. v. Braswell, 5 Cir. 1968, 388 F.2d 193. In that case the Court affirmed an award in a suit analogous to the one at bar, and we need only quote from Judge Wisdom's excellent analysis:

"While such lack of specificity might constitute a violation of the administrative due process guaranteed by Section 411(a) (5), we reach the same result on the ground that, under the authorities, Braswell's expulsion was not valid under either provision mentioned in the charges. '[A] union cannot discipline its members except for offenses stated in its constitution and by-laws, and * * * courts lack the power to recognize "implied offenses" and thereby rewrite the union's constitution.' Simmons v. Avisco,. Local 713, 350 F.2d 1012 (4th Cir. 1965)."

This Court dealt with a very similar question recently in Allen v. International Alliance of Theatrical, Stage Employees and Moving Picture Mach. Operators, 5 Cir. 1964, 338 F.2d 309. Allen was expelled from his union on a charge that he had violated a provision of the constitution which, by its terms was inapplicable to him. The evidence, however, established that he was guilty of violating another provision of the constitution, but he was not charged under that provision. In affirming the judgment of the district court, finding the expulsion unlawful and awarding reinstatement and damages, we stated:

" 'It is well established that penal provisions in union constitutions must be strictly construed. In McCraw v. United Ass'n of Journey [sic] & App. of Plumbing etc., Inc., [sic] E.D.Tenn. 1963, 216 F.Supp. 655, 662, a decision under the Landrum-Griffin Act, the Court pointed out: 'In determining whether discipline was properly imposed * * * any ambiguity or uncertainty in the constitution must. be construed against the union and in favor of the member, in accordance with well established principles of documentary construction.' " 388 F.2d at 198–199.

■ In light of the above language,. the union cannot possibly support its thesis that anticipatory safeguards to; a "strike *or other work stoppage*" are limited in fact to express strikes. Furthermore, the union cannot seriously maintain that it has the right to discipline the plaintiffs regardless of the coverage of Article XX, Section 1. A

union's own Bill of Rights must not be so illusory that specific guarantees are discarded in the name of general administrative powers. Nor can such guarantees be eclipsed by the unwritten and unarticulated observances of "all good union men."

 We find that the union's final two challenges, on sufficiency of the evidence to support the verdict and on excessive damages, lack any merit.

Affirmed.