Edward L. **JENKINS**, Plaintiff,

v.

**GENERAL MOTORS CORPORATION,**
a Delaware corporation, et al.,
Defendants.

**Civ. A. No. 4384.**

United States District Court,
D. Delaware.

Sept. 28, 1973.

L. Vincent Ramunno, Wilmington, Del., for plaintiff.

Harvey B. Rubenstein, Wilmington, Del., for defendants.

## OPINION

STAPLETON, District Judge:

This proceeding began as an action by an employee against his employer and his local union. The claim against the employer resulted from a discharge alleged to have been racially motivated. The claim against the local union was founded on an alleged breach of its duty of fair representation. Each defendant asserted that the claims against it were barred by limitations. The Court determined that the issues raised by these contentions should be heard and determined at the outset. After briefing and argument, the Court dismissed the claims against the employer as barred by limitations. As to the local, the Court construed the complaint as stating a cause of action for unlawful discrimination in the processing of plaintiff's grievance that was not necessarily barred by the applicable statute of limitations.[1]

---

1. See Jenkins v. General Motors, et al., 354 F.Supp. 1040 (D.Del.1973).

The union thereafter filed a motion to dismiss based upon the argument, among others, that plaintiff had failed to exhaust his internal union remedies. Both sides filed affidavits and the motion was briefed and argued.

The union's initial brief was filed on April 11, 1973; argument was held on July 5, 1973. At the oral argument plaintiff's counsel requested the opportunity to file additional affidavits on or before July 13, 1973 and indicating that the Court was prepared to treat the motion to dismiss as a motion for summary judgment. An opportunity for reply affidavits was afforded.

Plaintiff availed himself of this additional opportunity to file affidavits. Thereafter, he applied to the Court for leave to take discovery prior to any disposition of the defendant's motion. In response to the Court's request, plaintiff's counsel supplied the Court with a list of union officials to whom plaintiff wished to address interrogatories and set forth the scope of the interrogation which plaintiff desired to conduct. All of the requested discovery dealt with the handling of the grievance against the employer which plaintiff had filed as a result of his discharge and which the union allegedly failed to diligently pursue because of plaintiff's race.

While the local union's motion was under advisement, plaintiff was granted leave to amend his complaint and to bring in the International UAW as an additional defendant. The claims against this new defendant are similar to those against the local union and involve the processing of the same grievance.

Plaintiff was discharged by General Motors on July 9, 1968. A grievance was filed the same day. The grievance was unsuccessfully pursued through the first two steps of the grievance procedure specified in the collective bargaining agreement. An appeal was taken to the Appeals Committee. This "Step Three" procedure was initiated by an exchange of "Statements of Unadjusted Grievance" on or about September 12, 1968. The grievance remained unresolved at "Step Three" and, at some date not indicated in the record, the matter was pursued into Step Four and placed on the docket of an impartial "Umpire." Plaintiff's grievance was withdrawn by the union from the Umpire's Docket on April 12, 1970. According to the plaintiff, the union did not contact him to inform him of this withdrawal until December 29, 1970, when he received a letter in response to an inquiry which he had made concerning the status of his grievance. This suit was filed on May 22, 1972.

Under the collective bargaining agreement, the Regional Director of the International Union decides whether to take a grievance into Step Three and, if not there resolved, decides whether to press it through Step Four. The Appeals Committee which processes grievances in Step Three consists of the Regional Director or his designate, the Chairman of the local's Shop Committee or his designate, and "two representatives of Local or Divisional Management."

The local union relies upon the "exhaustion" rule stated by the Third Circuit Court of Appeals in Brady v. Trans World Airlines, Inc., 401 F.2d 87, 104 (1968):

> It has been the general rule, and the rule of this circuit, that before a suit against a union for breach of its duty of fair representation may be brought in the courts, the member must first exhaust the available internal union remedies, or show an adequate reason for failing to do so. There is good reason for this rule which forestalls judicial interference with the internal affairs of a labor organization until it has had at least some opportunity to resolve disputes concerning its own legitimate affairs. . . .

The defendant local union also refers the Court to Section 13 of Article 33 of

the Constitution of the International Union UAW which provides:

It shall be the duty of any member or subordinate body who feels aggrieved by any action, decision, or penalty imposed upon him or it, to exhaust his or its remedy and all appears therefrom under the laws of the International Union prior to appealing to a civil court of governmental agency for redress.

An affidavit of the Administrative Assistant to the President of the UAW accurately summarized the provisions of Article 33 of the Constitution:

. . . Article 33 of the 1970 Constitution guarantees members of Local Unions the right to challenge the actions of the local union at a membership meeting. This includes wrongful Local Union actions in regard to the processing or withdrawal of contract grievances. If the membership of a Local Union rejects this challenge of its members, or if the member was unable to get the matter raised at a local membership meeting, then the member would have the right to appeal to the International Executive Board. . . . At a hearing before the Appeals Committee of the International Executive Board, the member has the right to be represented by counsel, to produce witnesses and other evidence and to submit briefs or have them submitted on his behalf. A court reporter makes a verbatim transcript of such a hearing. If the member was dissatisfied with the decision of the International Executive Board, he has the further right to appeal to the Constitutional Convention Appeals Committee or to the Public Review Board.[2]

The Public Review Board referred to here was established under Section 1 of Article 32 of the Constitution which provides:

For the purpose of insuring a continuation of high moral and ethical standards in the administrative and operative practices of the International Union and its subordinate bodies, and to further strengthen the democratic processes and appeal procedures within the Union as they affect the rights and privileges of individual members or subordinate bodies, there shall be established a Public Review Board consisting of impartial persons of good public repute, not working under the jurisdiction of the UAW or employed by the International Union or any of its subordinate bodies.

The local union's affidavits further establish that the plaintiff did not pursue any of these remedies in connection with his claim of a breach of its duty of fair representation.

Section 101(a)(4) of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(4), provides in part as follows:

No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administra-

2. The union has supplied the Court with a copy of the UAW Constitution adopted in April of 1970. Prior case law indicates that, for present purposes, the provisions of the Constitution existing immediately theretofore were not materially different. *E. g.*, Anderson v. Ford Motor Co., 319 F.Supp. 134 (E.D.Mich.1970).

tive proceedings against such organizations or any officer thereof . . .

■ As noted by the Third Circuit Court of Appeals in Harris v. International Longshoremens Association, 321 F.2d 801, 805 (3rd Cir. 1963), "the proviso of section 101(a)(4), that a 'member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time)', reflects an effort to encourage mature, democratic self-government of labor organizations through the development of internal procedures for the correction of abuses by union officials and at the same time to provide reasonably expeditious judicial relief to [aggrieved] union members."

■ While Section 101(a)(4) has been held to constitute a congressional endorsement of the judicially created exhaustion rule, it does not mandate that courts reject every petition where internal union remedies have not been exhausted. Where the available remedies are not "reasonable," where those remedies are not "expeditious" within the time frame of the four month proviso, where pursuit of those remedies would be futile, or where the employee has otherwise adequately explained his failure to pursue available remedies, courts will entertain the request for judicial relief.[3]

A number of courts have heretofore reviewed the internal union remedies upon which the local union here relies and found them to be fair and reasonable.[4] This Court's review of the UAW Constitution leads it to the same conclusion. Indeed, plaintiff does not dispute that the relevant provisions of this Constitution are reasonable as a general proposition. He resists summary judgment, rather, on four grounds: (1) internal union remedies would be futile here because the union must sit in judgment on its own officials and hence cannot be impartial and because the union has already demonstrated its bad faith by its delay in the prosecution of plaintiff's original grievance, (2) "there is no assurance . . . that it will take only four months to complete" those proceedings, (3) plaintiff was unaware of the remedies provided in the Constitution, and (4) plaintiff should be allowed the opportunity at trial to explain his failure to pursue these remedies.

■ I assume for present purposes that those responsible for handling the plaintiff's grievance against his employer did not act as they should have in processing it. The proceedings which the local union here claims should have been instituted, however, would have involved determination of a different issue by different individuals. This Court is unwilling to assume without any record basis that the members of the International Executive Board and the Public Review Board would shrug off or reject arbitrarily a claim of union discrimination on racial grounds.[5]

■ If courts assumed bias on the part of all union officials simply from the fact that a claim alleges wrongdoing on the part of union members or from the fact that relief against the union is sought, this would, of course, effectively erase the rule requiring exhaustion of union remedies. The court in *Brady*

3. *E. g.*, Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2nd Cir. 1961) ; Harris v. International Longshoremens Association, 321 F.2d 801 (1963).

4. Baharah v. Eltra Corporation, 394 F.2d 502 (6th Cir. 1968) ; Anderson v. Ford Motor Co., 319 F.Supp. 123 (E.D.Mich.1970) ; Imbrunnone v. Chrysler Corp., 336 F.Supp. 1223 (E.D.Mich.1971) ; Koydra v. Sicard Industries, Inc. (N.D.N.Y.1972) ; Esquivel v. Air Conditioning Products Co., 82 L.R.R.M.

2001 (E.D.Mich.1972) ; Harris v. Continental Aviation Corp., 79 L.R.R.M. 2398 (N.D. Ohio 1972).

5. I assume, without deciding, that the involvement of the Chairman of the local union's Shop Committee and the Regional Director in this matter would warrant an inference that the local union membership might feel extraneous pressures in passing upon plaintiff's complaint against the local union.

made it clear that, in the absence of some evidence to the contrary, a court should not assume disqualifying bias on the part of union officials of higher rank than the alleged wrongdoers. In that case, a controversy had arisen in the plaintiff's local union, Local Lodge 1776, over a dues increase. The plaintiff alleged that as a result of his failure to comply with an illegally adopted increase, an employee of the International Association of Machinists ("IAM") had wrongfully certified to plaintiff's employer that he should be discharged for violating the union security provisions of the collective bargaining agreements. The alleged wrongdoer occupied a position similar to that of the Regional Director in this case; he was the "General Chairman of District 142, which had jurisdiction over Local Lodge 1776." The court held that the plaintiff's claim against the IAM for "hostile discrimination" was barred because of his failure to exhaust internal union remedies. The court concluded:

. . . there is no allegation or evidence that he invoked any appellate union procedures to redress the asserted unfair and arbitrary action against him by the local and district officers. Nor does he advance an adequate reason for his failure to do so. Mr. Brady's argument that it would have been futile to ask IAM to review its own dealings with him is not tenable for IAM's internal procedure provided reasonably prompt review of his contentions on union levels higher than those responsible for the decisions against him.

In this case, the International Executive Board and the Public Review Board were similarly situated with respect to those whose actions plaintiff challenges. This record suggests no reason for holding that a request to those bodies for relief would have been futile.

Plaintiff's second contention is more troublesome. The most helpful Third Circuit precedent in this area is Harris v. International Longshoremens Association, 321 F.2d 801 (3rd Cir. 1963). In that case the Third Circuit Court of Appeals reviewed the legislative history of Section 101(a)(4). The appellant there argued that "a final decision . . . [might] well not have been obtained within four months of the initiation of a proceeding." The court concluded:

On the one hand, it would not promote the stated purposes of Congress to insist that a union member pursue an internal remedy which could not, by its very nature, result in a decision within the period chosen by Congress as a reasonable norm. [Citations omitted] On the other, it would all but nullify any requirement of resort to internal remedies if union members were permitted to ignore reasonable procedures established by unions for internal adjustment of grievances because of mere uncertainty whether a final decision could or would be reached within the statutory period. As long as there is likelihood that some decision will be forthcoming within the four-month period, and the aggrieved member has not shown that he will be harmed by being required to seek such a decision, [citations omitted] the purposes of the act require that judicial intervention be withheld until the member has given the internal grievance procedures the chance to operate which Congress deemed to be reasonable. . . .

\* \* \* \* \* \*

. . . Throughout [the legislative history] the emphasis is upon a member's seeking or actually receiving internal relief during the statutory period, not upon the establishment of procedures which shall guarantee a final decision within that period before a member may be required to utilize them.

The court in *Harris* held that where there is "a substantial likelihood" of a union member's securing some decision within the four month period and he shows no substantial prejudice which might have resulted from his pursuing his union remedies, Section 101(a)(4) is no bar to application of the exhaustion

rule. If "substantial likelihood" in this context means more probable than not, the *Harris* case does not on this record compel a conclusion that plaintiff's second contention must be rejected. It is entirely possible that a decision would have been received from the Executive Board within four months; on the other hand, it appears entirely possible that it would not have been forthcoming during that period. In short, the record shows the existence of reasonable internal union procedure which, if pursued with diligence by those involved, could have produced a decision within four months.[6] There is no record evidence, however, from which this Court could conclude that a decision within four months would have been more likely than not.

The question presented by the motion of the local union is, therefore, whether Section 101(a)(4) bars application of the exhaustion rule where plaintiff has shown no prejudice and there appears a realistic possibility, though not probability, that a decision could be obtained within the four month period. I conclude that the answer to this question should be in the negative.

■ The purpose of the exhaustion rule, endorsed by Congress in Section 101(a)(4), is to give unions an initial opportunity to deal with their own internal problems. The legislative history of the Section reviewed in *Harris* indicates that the intent was to require union members to pursue the remedies for the statutory period and to allow them to seek redress thereafter. Where it appears clear or probable that relief cannot be secured within the statutory period, there is good reason to excuse resort to internal union remedies. Where there is a realistic possibility that a decision will be rendered within the period, however, there is no compelling reason to excuse the failure of a union member to make a good faith effort at seeking union redress.

■ It is difficult, at best, to prove that a hypothetical proceeding, had it been instituted, would probably have resulted in a decision within four months. Such a showing requires precise advance speculation about a decisional process which may prove either brief or protracted, depending on the nature of the individual case and a host of other factors. Yet, on these facts, a decision for the plaintiff would place on the union the burden of making that showing.[7] Over the long term, effectuation of the "first opportunity" policy which Section 101(a)(4) sought to foster, would depend, under such a ruling, upon unions being able to successfully shoulder that difficult burden. A decision for the union in this context would not, however, require that aggrieved union members shoulder a similar burden. They can assure their right to judicial remedy by the simple expedient of affording the union the four month opportunity Congress wished it to have.

■ I hold that where a union member has not made a good faith, four month effort to pursue reasonable internal union remedies and provides the Court with no evidence indicating that those remedies would be unlikely to produce a decision within a four month period, Section 101(a)(4) does not preclude application of the exhaustion rule.

---

6. Section 8 of Article 33 of the UAW Constitution provides that "The International Executive Board shall use its best efforts to render its decision within sixty (60) days of receipt of the appeal by the International President (i. e. the event which initiates an appeal from an adverse decision at the local union level)."

7. The unions could, of course, attempt to ease this burden by inserting definite time limits for hearings and decisions. The union procedures of this kind are designed, however, to handle a wide range of problems, some simple and some quite complex. Such fixed limitations, accordingly, would not appear to be realistic alternatives. The sixty day, "best efforts" provision referred to above (footnote p. 12) would seem to be about as far as a union can reasonably be expected to go in this direction.

In support of the third of his counterattacks, plaintiff has submitted an affidavit stating as follows:

2. That he is 44 years of age and has an eighth grade education.

3. He has no knowledge and was never made aware either by the Union or by the United States Equal Employment Opportunities Commission or by personal counsel, of any internal Union remedies which were available to him if he had a grievance against the Union. Furthermore, to the best of his knowledge, he has never read nor has he ever been shown a copy of the Constitution of the International Union of the United Automobile Workers, nor is he aware of any requirement that a member must exhaust internal remedies before initiating suit in civil court.

■ If the objective of the exhaustion rule of the *Brady* case is to be effectively served, I do not believe that ignorance without more can be held to constitute an "adequate reason for failing to" exhaust administrative remedies.[8] In Donahue v. Acme Markets, Inc., 54 L.C. 11,413 (E.D.Pa.1966), Judge Kirkpatrick had a similar situation before him, though one which was somewhat more appealing from the plaintiff's point of view. I concur in his conclusion:

. . . An affidavit filed by the plaintiff states that he did not know and was never informed of any internal methods of appeal, was never given and had never seen a copy of the Constitution, and was told by the Union representative at the meeting of January 31 that he could do nothing further. I do not think that this is a showing that he has "taken all reasonable steps available to (him) within the (Union's) internal structure." See Gainey v. Brotherhood, [46 L.C. ¶ 18,030] 313 F.2d 318, 322. He was a member of the Union and bound by its Constitution and not justified in remaining in ignorance of the provisions governing his own union or, in fact, of relying on a statement by an officer that there was nothing he could do.

Finally, plaintiff's fourth argument is likewise without merit. There is nothing inherent in the question presently before the Court which should occasion any departure from the usual rules governing motions for summary judgment. Summary judgment has frequently been granted in similar situations.[9] Plaintiff has been given ample opportunity to file affidavits in opposition to defendant's motion. The reasons for his failure to pursue his internal union remedies are matters within his own knowledge and do not require discovery. Indeed, his requested discovery would not be directed to any matter upon which this decision rests.

Plaintiff has failed to exhaust available internal union remedies. Accordingly, the local union is entitled to a summary judgment of dismissal.[10]

---

8. Brady v. Trans World Airlines, Inc., 401 F.2d 87, 104 (3rd Cir. 1968).

9. Bsharah v. Eletra Corp., 394 F.2d 502 (6th Cir. 1968); Foy v. Norfolk & Western Ry. Co., 377 F.2d 243 (4th Cir. 1966); Anderson v. Ford Motor Co., 319 F.Supp. 134 (E.D.Mich.1970); Koydra v. Sciard Industries, Inc., (N.D.N.Y.1972); Harris v. Continental Aviation Corp., 79 L.R.R.M. 2398 (N.D. Ohio 1972).

10. Plaintiff has not requested the Court to consider a "stay of these proceedings as appropriate relief rather than a dismissal. This is perhaps attributable to the fact that plaintiff appears clearly to have lost his right to pursue his internal union remedies as a result of his delay in seeking such relief. If this be the fact, it would not alter any of the conclusions which the Court has here reached. *Cf.* Anson v. Hiram Walker & Sons, Inc., 248 F.2d 380 (3rd Cir. 1957).