Edward L. **JENKINS**, Plaintiff,

v.

GENERAL MOTORS CORPORATION, a Delaware corporation, and United Automobile Workers Local 435, Defendants.

Civ. A. No. 4384.

United States District Court,
· D. Delaware.

Jan. 5, 1973.

On Motion for Reargument Jan. 30, 1973.

L. Vincent Ramunno, Wilmington, Del., for plaintiff.

Allen M. Terrell, Jr., of Richards, Layton & Finger, Wilmington, Del., for defendant General Motors Corp.

Harvey B. Rubenstein, Wilmington, Del., for defendant United Automobile Workers Local 435.

Jack L. Gould, E. E. O. C., Baltimore, Md., amicus curiae.

## OPINION

STAPLETON, District Judge.

This action seeks redress for alleged violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), Section 1 of the Civil Rights Act of 1866 (42 U.S.C. § 1981), and the Labor Management Relations Act (29 U. S.C. § 151 et seq.). Plaintiff is a black citizen of the United States who, as of July 9, 1968, was employed by defendant General Motors Corporation ("GM") at its auto assembly plant in Wilmington, Delaware and was a member in good standing of defendant United Automobile Workers Local 435 ("Local 435").

Count I of the complaint paraphrases the wording of the Title VII definition of an "unlawful employment practice" [1] and charges GM with unspecified, racially discriminatory "policies, practices, customs and usages." The only factual allegations supporting these conclusory charges are found in the following two paragraphs of the complaint:

"6(b). Plaintiff was subjected to severe provocation and harassment by the foreman during the one and one-half years of employment. Plaintiff was yelled and cursed at, called 'Little Sambo', etc. Many other Negro employees were treated in the same man-

---

1. 42 U.S.C. § 2000e–2(a) and (c).

ner. Caucasian employees were not similarly harassed and intimidated.

\* \* \* \* \* \*

10. As a further result of said discrimination, plaintiff Edward J. Jenkins was caused to lose considerable income, in that he was out of work from July 9, 1968 to December of 1968 and his loss amounted to approximately $150 per week during that time. He has continued and is still continuing to have decreased earnings as a result of said discrimination."

Count I also charges that Local 435 has made no attempt to correct this situation.

Count II of the complaint alleges that Local 435 violated its "duty of fair representation imposed . . . by the National Labor Relations Act in that . . . [it] acquiesced and/or joined in the unlawful and discriminatory practices and policies [of GM] complained of in . . . [Count I and has] failed to protect the Negro members of the company from said discriminatory policies and practices."

Plaintiff purports to bring this action on behalf of himself and all "Negro persons who are employed or might be employed by . . . [GM] at its auto assembly plant located in Wilmington, Delaware and who are members of . . . [Local 435], who have been and continue to be. or might be adversely affected by the practices complained of herein." In support of the class claim plaintiff expressly invokes Rule 23(b) (2) and alleges:

". . . There are common questions of law and fact affecting the rights of the members of this class who are, and continue to be limited, classified and discriminated against in ways which deprive and tend to deprive them of equal employment opportunities and otherwise adversely affect their status as employees because of race and color. These persons are so numerous that joinder of all members is impracticable. A common relief is sought. The interest of said class are adequately represented by plaintiff. Defendants have acted or refused to act on grounds generally applicable to the class."

The complaint prays for an injunction restraining defendants from continuing the discrimination referred to in the complaint and a judgment requiring defendants to "pay the plaintiff for his loss of income, punitive damages and for the costs of this suit."

Both GM and Local 435 have moved to dismiss the complaint on the grounds that the action is barred by state and federal statutes of limitations and that the complaint fails to state a claim upon which relief can be granted.

The complaint and the supplementary affidavits filed by the parties reveal the following undisputed facts. Plaintiff first informed the Equal Employment Opportunity Commission ("the Commission") of the alleged racially inspired harassment and discharge referred to in the complaint by a letter received on November 22, 1968. On December 2, 1968 plaintiff sent the Commission a completed charge form which the Commission transmitted to the State of Delaware, Department of Labor and Industrial Relations, on December 18, 1968, in accordance with Section 706(a) of Title VII. On January 2, 1969, the Commission received a letter from the Delaware Department of Labor and Industrial Relations stating that its receipt of the matter was untimely and that Delaware, therefore, was returning it to the Commission for handling. On January 2, 1969, plaintiff's charge was filed with the Commission. On March 18, 1969 plaintiff's charge was amended and the amended charge was served on GM on March 20, 1969. An investigation ensued.

On February 1, 1971, the Commission sent plaintiff a letter advising him that it found reasonable cause to believe that his charge was true and that conciliation efforts with GM would be undertaken. Conciliation efforts failed and on March 2, 1971, the Commission received a letter from plaintiff acknowledging that con-

ciliation had failed and requesting the Commission's assistance in obtaining an attorney to handle his case in court. Subsequently, plaintiff retained an attorney admitted to practice before the bar of this Court. On January 27, 1972, pursuant to plaintiff's request, the Commission transmitted to plaintiff's attorney a *Notice of Right to Sue Within Thirty Days.* This notice was received by the attorney on January 31, 1972. This suit was filed 112 days later on May 22, 1972.

### The Propriety Of The Class Claim

Before proceeding to a consideration of defendants' motions, I consider it appropriate to determine pursuant to Rule 23(c)(1) whether this action is properly brought as a class action and, if so, what class plaintiff may properly represent.

Plaintiff's claim for damages and costs is a personal claim. The class action phase of this case is brought under Rule 23(b)(2) which refers to situations in which the defendant "has acted or refused to act' on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . . with respect to the class as a whole." The only relief requested for the class is injunctive relief against future discrimination.

Assuming without deciding that the complaint states a claim on behalf of the class for injunctive relief, I conclude that plaintiff fails to satisfy the requirement of Rule 23(a)(4) and, accordingly, cannot maintain the injunctive phase of this case as a class action.

▇▇▇ Rule 23(a)(4) requires a showing that the representative party "will fairly and adequately protect the interests of the class." Under this rule the representative party must have a sufficient stake in the class claim to assure that he will adequately litigate the issues upon which the class claim depends and the determination of which will ultimately be binding on the members of the class. Here the plaintiff has not been employed by GM for over four

and one-half years and does not seek reinstatement. He is elsewhere employed and alleges no interest in returning to GM. Similarly, plaintiff does not allege that he is currently represented by Local 435 or that he desires to be so represented other than in connection with the events which occurred at GM in 1967 and 1968. Accordingly, he has no stake, other than perhaps a general interest in fair employment, in whether the injunctive relief prayed for is granted or denied. While he has a personal interest in proving discrimination in 1967 and 1968, he has no personal interest in establishing the existence of a pattern of discrimination from that time until the present which is, of course, a crucial element of the class claim for prospective injunctive relief. These deficiencies of plaintiff as a class representative preclude his representation of the class described in the complaint as well as any other sub-class thereof on whose behalf this claim for injunctive relief might be asserted.

Plaintiff has cited no case suggesting that one in his position may represent a similar class in pressing a claim for relief of this character. A number of cases, while not precisely on point, support the conclusion I here reach. E. g., White v. Gates Rubber Company, 53 F. R.D. 412, 413–414 (D.Colo.1971); Hyatt v. United Aircraft Corp., 50 F.R.D. 242, 247 (D.Conn.1970); Burney v. North American Rockwell Corp., 302 F.Supp. 86, 90 (C.D.Cal.1969). See also Developments in the Law—Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109, 1220–21 (1971).

▇▇▇ This leaves plaintiff with his individual claims for relief. To the extent the complaint can be construed as seeking an injunction on behalf of plaintiff individually, it clearly fails to state a claim upon which relief can be granted. No threat of irreparable injury to plaintiff is alleged and it is difficult to see how the possibility of such injury might be claimed in this context.

Accordingly, the only questions remaining for decision at present are whether plaintiff's individual claims are barred by limitations.

*Plaintiff's Title VII Claims Against GM And Local 435*

Section 706(e) of Title VII provides that an individual may file a civil action within thirty days after the Commission notifies him that it has been unable to secure voluntary compliance with the Act. The notification sent to plaintiff's attorney at plaintiff's request was entitled "Notice Of Right To Sue Within Thirty Days" and provided in part as follows:

> "Pursuant to Section 706(e) of Title VII of the Civil Rights Act of 1964, you are hereby notified that you may within thirty (30) days of the receipt of this communication, institute a civil action in the appropriate federal district court."

■ Section 706(e) is the statute of limitations applicable to plaintiff's Title VII claims. Its effect is clear. As the court observed in Goodman v. City Products Corporation, Ben Franklin Division, 425 F.2d 702, 703 (6th Cir. 1970):

> "While uncertainties and ambiguities may exist in regard to other time limitations provided in the Civil Rights Act of 1964, there appears no such uncertainty or ambiguity with regard to the 30 day limitation here involved. The statute clearly provides that ' * * * a civil action may, within 30 days thereafter, be brought * * *.' The permissible 'may' refers to the option of the aggrieved party to bring a lawsuit, not to a discretion in the Court to receive the case following the expiration of 30 days."

■ In this case plaintiff was represented by privately retained counsel during the entire thirty day period and no contact with the court was made by plaintiff or his counsel during that peri-od. These facts distinguish the present case from the authorities relied upon by plaintiff and the Commission in its *amicus* brief.[2] The analogous authorities dictate a conclusion that plaintiff's Title VII claims are barred. Harris v. National Tea Company, 454 F.2d 307 (7th Cir. 1971); Rice v. Chrysler Corporation, 327 F.Supp. 80 (E.D.Mich.1971); Huston v. General Motors Corporation, W.D.Mo. C.A. 20332–2, July 27, 1972; McNeal v. General Motors Corporation, D.Kan. C.A. KC–3529, August 21, 1972.

*Plaintiff's Section 1981 Claim Against GM*

Plaintiff and GM agree that federal law provides no period of limitations for actions brought under Section 1981 and that this Court, accordingly, must look to the "most analogous" Delaware statute of limitations. Waters v. Wisconsin Steel Works of International Harvester Company, 427 F.2d 476 (7th Cir. 1970); McCluny v. Silliman, 3 Pet. 270, 57 L. Ed. 676 (1830); Campbell v. City of Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895). Plaintiff asserts that the applicable Delaware statute by this test is a three year statute, 10 Del.C. § 8106; GM asserts that a one year statute, 10 Del.C. § 8110, is more appropriate. Both statutory periods would have run prior to the filing of the complaint in this action, however, unless tolled under some applicable rule of law.

■ Plaintiff suggests that the applicable Delaware statute was tolled during the period in which plaintiff was pursuing the administrative remedies provided by Title VII. GM responds by saying that no principle of Delaware limitations law would justify such a result and that, in any event, such a result would be inconsistent with the federal law of this circuit declared in Young v. International Telephone and Telegraph Co., 438 F.2d 757 (3rd Cir. 1971).

I need not address myself to the interesting question of whether a federal

---

2. E. g., McQueen v. E. M. C. Plastic Co., 302 F.Supp. 881 (E.D.Tex.1969); Pres-cod v. Ludwig Industries, 325 F.Supp. 414 (N.D.Ill.1971).

court "borrowing" a state statute of limitations for application to a federal claim is bound by the "tolling" law of the state.[3] Assuming I were free to ignore the law of Delaware, a binding federal precedent would preclude my adopting the rule for which plaintiff contends.

In the *Young* case, the Third Circuit Court of Appeals determined (1) that Title VII of the Civil Rights Act of 1964 and Section 1981 provide independent causes of action, (2) that "nothing in Title VII . . . imposes any jurisdictional barrier to a suit brought under Section 1981 charging discrimination in private employment," (3) that a Section 1981 action may be instituted without resorting to the administrative remedies provided by Title VII and (4) that the filing of a Section 1981 suit during the pendency of administrative proceedings under Title VII will not frustrate the Congressional policy underlying Title VII because the district courts have sufficient flexibility in Section 1981 actions not only to avoid undermining the conciliation process prescribed in Title VII but also to provide, in many instances, the most hospitable context for the operation of that process. The *Young* case clearly indicates that the plaintiff in this case could have commenced a Section 1981 action against GM at any time during the three year period following his discharge. Accordingly, this is not an appropriate context for applying tolling principles and plaintiff's Section 1981 claim against GM is barred regardless of which Delaware statute is chosen as most analogous.

*Plaintiff's Section 1981 Claim And Labor Act Claim Against Local 435*

Plaintiff concedes in his brief that "the unlawful acts that GM is charged with vis-a-vis plaintiff were either ended, i. e. harassment, or completed, i. e. discharge, on July 9, 1968, the date of plaintiff's discharge." Accordingly, plaintiff admits that his Section 1981

claim against GM is barred unless the limitations period was tolled during the Title VII administrative proceedings. As to Local 435, however, plaintiff claims in his brief that "the unlawful act . . . [with which it] is charged . . . i. e. failing to represent plaintiff and other blacks fairly because of race, are continuing to the present time." Accordingly, plaintiff asserts, as an additional reason for denying the motion of Local 435, that the applicable statute of limitations has not yet begun to run.

█ While I agree with plaintiff that Local 435's motion to dismiss cannot be granted on the basis of the current record, I do not reach this conclusion by accepting plaintiff's "continuing wrong" theory. My reasons for rejecting that theory so far as the current record is concerned may have some bearing, however, on the future course of these proceedings and it is, therefore, appropriate that I set them forth at this time.

Plaintiff's argument invokes a doctrine applied in Jamison v. Olga Coal Co., 335 F.Supp. 454 (S.D.W.Va.1971) and Mixson v. Southern Bell T. & T. Co., 334 F.Supp. 525 (N.D.Ga.1971). In the *Jamison* case, the employer and the union were alleged to have established and to be currently maintaining racially discriminatory promotional and seniority systems. In addition to alleging that the employer had failed to promote him to motorman in 1964, the plaintiff also charged a continuing course of conduct on the part of the union which had involved numerous instances of unfair or discriminatory representation of negro employees. On the basis of these allegations of "continuing discriminatory [union] conduct" the court declined to grant a motion to dismiss a 1970 action as being barred by a two year statute of limitations. Similarly, in the *Mixson* case, the court declined to hold a Title VII claim against an employer barred by the ninety day limitations period pre-

3. See Janigan v. Taylor, 344 F.2d 781 (1st Cir. 1965) ; Moviecolor Ltd. v. Eastman Kodak Co., 288 F.2d 80 (2nd Cir. 1961).

scribed in Section 2000e–5(d) because the employment practice challenged was a "continuing" pension system which discriminated on the basis of sex.

Here the factual allegations of the complaint against the union are that it "acquiesced and/or joined in," the challenged acts of the employees during 1967 and 1968, that it failed to protect black employees from those acts, and that it has made no "efforts or attempts since July 9; 1968" to correct the situation as it then existed. There are no factual allegations of a presently continuing course of conduct on the part of GM in which Local 435 is continuing to acquiesce or of a presently continuing practice of racial discrimination on the part of the union.[4]

I conclude that the allegations of this complaint are not sufficient to bring the "continuing wrong doctrine" of *Jamison* and *Mixson* cases into play. If an allegation of failure to correct past discriminatory conduct were alone enough to invoke this doctrine, unions would remain open to suit indefinitely and the policy behind statutes of limitations would be wholly frustrated.

■ In the plaintiff's brief and that of the *amicus*, it is suggested that a grievance was filed as a result of plaintiff's discharge and that the union's failure to fairly represent plaintiff included its handling of that grievance. It is, of course, true that an action for breach of a union's duty of fair representation may be predicated upon its handling of, or failure to handle, a grievance and that, in such a case, the breach of duty may not occur until the

union declines to pursue the grievance, or treats it arbitrarily and perfunctorily, because of bad faith, hostility, discrimination or dishonesty on the part of the union officials. See e. g., Steele v. L. & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). In such cases, however, the breach of duty does occur, and a cause of action does accrue, at some point in time. See e. g., deArroyo v. Sindicato de Trabajadores Packinghouse AFL–CIO, 425 F.2d 281 (1st Cir. 1970). The date may be difficult to ascertain in a given case, but this does not mean that limitations may simply be ignored on the theory that the union's wrong continues indefinitely or until the underlying wrong has been righted.

■ As previously indicated, however, my rejection of plaintiff's continuing wrong theory does not require that Local 435's motion be granted. While the question is not free from doubt, giving the complaint a liberal reading, I conclude that plaintiff's allegation of a failure on the part of Local 435 to correct the situation resulting from plaintiff's harassment and discharge is sufficient to include a theory that the union breached its duty of fair representation in the processing of the grievance. *Cf.* Conley v. Gibson, 355 U.S. 41, 45–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court cannot reliably ascertain from the present record when any such breach may have occurred.[5] Dismissal at this time is, accordingly, inappropriate. Local 435 may hereafter move for summary judgment if it concludes that it can supply a record indicating that plain-

---

4. Count II alleges that the union has "acquiesced and/or joined" in the discriminatory practices and policies of GM referred to in Count I. As previously noted, the only non-conclusory allegations in Count I regarding GM refer to conduct during the year and a half preceding July 9, 1968. Even if plaintiff's paraphrase of the statute were found to constitute a sufficient allegation of a presently continuing course of conduct on the part of GM and the union, however,

they would not be allegations of such conduct vis-a-vis plaintiff and his claim for damages.

5. Plaintiff and the Commission assert that the grievance has not yet been acted upon. The supplemental papers filed by the Commission appear to indicate that the grievance was filed on July 9, 1968, processed, and denied on August 9, 1968. The record is sketchy, however, regarding the grievance proceeding.

tiff's claims under Section 1981[6] and the Labor Management Relations Act are barred by limitations.

This action may not be maintained as a class action; GM's motion to dismiss will be granted; Local 435's motion to dismiss plaintiff's Title VII claim will be granted and the remainder of its motion will be denied.

Submit order.

## ON MOTION OF DEFENDANT LOCAL 435 FOR REARGUMENT

 It is well settled that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, (1957). Plaintiff need only plead a concise statement of his "claim," F.R.Civ.P. 8, and need not plead evidentiary facts.

Plaintiff here alleged that Local 435, his exclusive collective bargaining representative, breached a duty of fair representation by acquiescing in, and failing to correct, discriminatory practices of General Motors occurring during the year and a half preceding June 9, 1968. This Court in its Opinion of January 5, 1973 held that these allegations stated a claim and that it was not clear from the face of the complaint or from the supplementary materials that this breach must necessarily have occurred on or prior to June 9, 1968.

 A duty of fair representation does not necessarily terminate when the employer's conduct, with respect to which representation is required, ceases. Accordingly, the Court concluded that the plaintiff may be able to prove facts that would establish a claim not barred by limitations. While the current record suggests that plaintiff may be unable to do this, that suggestion would not permit this Court to grant the mo-

tion to dismiss. Wright & Miller, Fed. Prac. & Proc. § 1357 pp. 601–603 (1969).

## ORDER

Accordingly, it is ordered that the motion of defendant Local 435 for reargument is denied.

6. I assume for present purposes, without deciding, that the allegations supporting plaintiff's Labor Management Relations Act claim also state a cause of action under Section 1981.