Moses **DICKERSON** et al.

v.

**UNITED STATES STEEL CORPORATION** et al.

Civ. A. No. 73-1292.

United States District Court,
E. D. Pennsylvania.

Sept. 16, 1974.

Cassandra Maxwell Birnie, Philadelphia, Pa., Edwin D. Wolf, Employment Discrimination Referral Project, John C. Anderson, Philadelphia, David R. Cashdan, Washington, D. C., for plaintiffs.

Henry T. Reath, Philadelphia, Pa., A. E. Lawson, Asst. Gen. Counsel, S. G. Clark, Jr., U. S. Steel Corp., Pittsburgh, Pa., Dennis D. Clark, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

This is an action brought by three blacks who are former employees of defendant United States Steel and former[*] members of defendant United Steelworkers. The complaint alleges that defendants discriminated against plaintiffs on the basis of their race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and Section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981. Specifically, plaintiffs allege that defendants pursued a policy of racial discrimination which was manifested in the treatment of plaintiffs in hiring, promotion, and discipline throughout their tenure at United States Steel's Fairless Hills, Pennsylvania plant.

Plaintiffs bring this action on behalf of themselves and others similarly situated. Plaintiffs move for a determination of class under Rule 45 of the Local Rules of Civil Procedure of this District. Plaintiffs are applying for class certification under Rule 23(a)(1–4) and (b)(2) of the Federal Rules of Civil Procedure and they seek to represent:

a. all blacks now employed or who might be employed in the future by United States Steel Corporation at its Fairless Hills, Pennsylvania plant; all blacks who were employed by the company from July 2, 1965 to the present date, but who are no longer employed there; and all blacks who unsuccessfully sought employment at the Fairless Hills plant at any time between July 2, 1965[1] and the present date;

b. all blacks who are represented, or who might be represented in the future by defendant labor organizations at the Fairless Hills, Pennsylvania plant; and all blacks who were represented by defendant labor organizations at the Fairless Hills plant from July 2, 1965 to the present date.

We find that plaintiffs have met their burden under Rule 23(a)(1–4) and 23(b)(2), and we certify a class which is defined to include all those persons listed above.

*Joinder of Curtis Worthy as Plaintiff.*

Subsequent to moving for a class determination, plaintiffs moved to add Curtis Worthy as a plaintiff to this action either by joinder under Rule 20 or intervention under Rule 24. Since plaintiffs admit that they seek Worthy's addition in order to influence the class action determination, and since his presence may bear on this question, we will consider plaintiffs' motion to add Worthy before discussing the class action question.

Under the circumstances presented by plaintiffs' application on behalf of Wor-

---

[*] It is not clear from the record whether plaintiffs are currently members of any of the defendant local unions or defendant international union.

[1] The July, 1965 date is chosen because Title VII became effective upon the date. With respect to the claim based on § 1981, the courts of this district have applied Pennsylvania's statute of limitations, running from six years prior to the filing of the administrative charge with the Equal Employment Opportunity Commission ("EEOC"). Therefore, since the EEOC charges in this case were filed in October, 1971, any class declared under § 1981 could not extend into the past beyond October, 1965.

thy, the decision to permit his joinder or intervention is one within the discretion of the court. Defendant raises a host of procedural arguments to counter Worthy's addition, but we feel a sounder basis for denial lies in the prejudice which would result to defendant should the Court permit joinder or intervention now that the briefs directed to the class action question have already been filed. Plaintiffs' motion on behalf of Worthy does not reveal in which of Fairless' departments he is employed, what the nature of the alleged discriminatory acts against him were, or whether he is eligible to receive back pay under the consent decrees. (See Section e, *infra.*) All these facts are relevant to the class action question and there is no good reason why plaintiffs should benefit by Worthy's presence if the defendant must argue—and the court must decide—that question without knowledge of the ramifications of this presence.

*Requirements of Rule 23.*

I. *Plaintiffs' Burden.*

■ In order for the named plaintiffs to represent the class they seek to represent, they must show that:

i. the class is so numerous that joinder of all members is impractical;

ii. there are questions of law or fact common to the class;

iii. [their] claims . . . . are typical of the claims . . . . of the class;

iv. [they] will fairly and adequately protect the interests of the class. In addition, since plaintiffs have moved for class certification under Rule 23(b)(2), they must show that the defendants have acted or failed to act on grounds generally applicable to the class, which would warrant final injunctive relief or declaratory relief with respect to the class as a whole.

The burden is upon plaintiffs to show that each of these requirements has been met. *Eisen v. Carlisle and Jacquelin,* 391 F.2d 555 (2nd Cir. 1968).

Plaintiffs contend that the figure of 839 black employees which was provided by defendant Steel Company is sufficient to satisfy the numerosity requirement even without considering the number of ex-employees. The alleged policy of racial discrimination, plaintiffs argue, provides a common question of both fact and law. Similarly, the claim of injury from this alleged discriminatory policy is typical of that of the class. Fourth, plaintiffs argue that they will be fair and adequate representatives of the class because they are represented by counsel experienced in civil rights class actions and because they have no interests which conflict with those of the class. In support of the proposition that their status as ex-employees does not represent a conflict with the interests of Fairless' present black employees, which plaintiffs also seek to represent, plaintiffs cite Johnson v. Georgia Highway, 417 F.2d 1122 (5th Cir. 1969) and Hackett v. McGuire Bros., Inc., 445 F.2d 442, 443 (3rd Cir. 1971) (dictum).

Plaintiffs claim to meet the requirement of (b)(2) because defendants' alleged policy of racial discrimination constitutes action on grounds generally applicable to the class sought here, and that proof of such a policy at trial would make appropriate final injunctive and declaratory relief with respect to the class as a whole.

Defendants have challenged class treatment of this suit on a number of grounds. Since most of these grounds go to a number of the Rule 23 prerequisites—which is not surprising given the substantial degree to which these prerequisites overlap—we will focus on the grounds asserted rather than repeat the above journey through the Rule's subdivisions.

■ Before discussing defendants' arguments, it should be noted that none of defendants' arguments against class certification under 23(b)(3) are rele-

vant, since plaintiffs have asked for (b)(2) certification only, at least at this juncture. Certification under (b)(2) is proper when only declaratory and/or injunctive relief is sought; an action seeking money damages must await (b)(3) certification. Paddison v. Fidelity Bank, 60 F.R.D. 695 (E.D.Pa.1973); Williams v. Sheetmetal Workers Local 19, et al., 59 F.R.D. 49 (E.D.Pa.1973). Second, the defendant unions have opposed class certification solely on the grounds that it would be inappropriate or untimely in view of the industry-wide consent decrees; therefore in discussing all issues save the consent decrees' impact reference will be made to defendant United States Steel alone.

## II. *Defendants' Arguments Contra Class Certification.*

a. *The named plaintiffs are not entitled to relief on the merits of their case.*

■ Defendant claims that none of the requirements of 23(a) are met because the plaintiffs were not discriminated against. An affidavit signed by an officer of defendant United States Steel's Labor Relations department represents that the allegations of the three named plaintiffs are untrue. However, a motion for class certification is neither the proper time nor the appropriate procedure for deciding the merits of the case. Kahan v. Rosenstiel, 424 F.2d 161 (3rd Cir. 1970). We do not feel that Huff v. N. D. Cass Co. of Alabama, 485 F.2d 710 (5th Cir. 1973), supports defendants' position, since that case expressly states that:

"this court is committed to the principle that the standard for determining whether a plaintiff may maintain a class action is not whether he will ulti-

mately prevail on his claim." 485 F.2d 712 (5th Cir. 1973)

b. *The named plaintiffs may not represent a class including present employees.*

■ Defendant claims that the named plaintiffs' status as ex-employees precludes the certification of a class which includes present employees. As ex-employees, defendant asserts, plaintiffs' claims share no question of fact or law with those of the present employees; their claims are not typical of those of the present employees; and they cannot fairly and adequately represent present employees because their claims are not co-extensive with those currently employed and because there are conflicts of interest between past and present employees, in that any reinstatement of the former will limit the opportunities for promotion or even jobs for the latter.[2]

Defendant refers the Court to Jenkins v. General Motors Corp., 354 F.Supp. 1040 (D.Del.1973); Tolbert v. Daniel Constr. Co., 332 F.Supp. 772 (D.S.C. 1971); Hyatt v. United Aircraft Corp., 50 F.R.D. 242 (D.C.Conn.1970); Burney v. North American Rockwell Corp., 302 F.Supp. 86 (C.D.Cal.1969) as authority for its position. In *Jenkins,* the Court denied class certification because plaintiff failed to show that he would fairly and adequately represent the interests of the class. The Court declared that since plaintiff, who had not been employed by defendant for over four years, did not request reinstatement in his prayer for relief there was no reason to believe that he had a personal interest in establishing the existence of discrimination from the time he left defendant to the time of suit. 354 F.Supp. at 1040. In *Tolbert,* an individual who had

---

2. Defendant also claims that the named plaintiffs lack standing to prosecute this action because as former employees they are beyond the impact of any discriminatory conduct by defendants. Defendant relies on O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct.

669, 38 L.Ed.2d 674 (1974), but the named plaintiffs in *O'Shea,* unlike those in the present case, did not allege that they had themselves been injured by discriminatory conduct on defendants' part.

been out of the defendant's employ for two years was not permitted to represent a class which encompassed defendant's present employees. The Court stated:

"Having had no contact with defendant for more than two years, [plaintiff] has no personal knowledge of defendant's policies during that period or at the present time. In short, whatever might be his capacity to represent Negroes employed prior to his resignation, he certainly cannot be said to be in a position fairly and adequately to protect the interests of the entire clsss he purports to represent."

As an additional factor weighing against class representation, the *Tolbert* Court noted that the plaintiff had worked in only one of defendant's many job lines.

In Hyatt v. United Aircraft, a class was denied where the plaintiff had voluntarily resigned defendant's employ two years prior to suit. The Court expressed concern that plaintiff's lack of personal knowledge of defendant's operations during the intervening two years would prevent him from adequately representing the interests of defendant's present employees. In Burney v. North American Rockwell, a former employee was denied class representative status where two years had elapsed since he had last worked for Rockwell. The Court felt that plaintiff would have no interest in proving acts of discrimination against other members of the class, since "in order to obtain relief for himself, plaintiff need not necessarily prove every act of alleged discrimination against Negroes that defendant may have committed . . . ." 302 F. Supp. at 90.

What these cases are concerned about is that an ex-employee will either lack a personal stake in proving discrimination against present employees or lack the personal knowledge instrumental in proving such discrimination. In regards to the first fear, the named plaintiffs

here have requested reinstatement, as well as advancement to those positions which they would have held but for the alleged discrimination. Moreover, the plaintiffs have an interest in showing present discrimination in order to prevail on the merits; certainly the statistics regarding present employment patterns or the testimony of those presently employed will be easier for plaintiffs to amass than would job patterns or testimony of past employees, many of whom may be dispersed throughout the country.

As for the concern that plaintiffs will lack personal knowledge of defendant's practices since their departure or of practices in other departments than those in which they had been employed, at least one of the named plaintiffs was still employed by defendant at the time suit was filed. (As for the other two, one retired three years before filing of suit and the other allegedly quit in protest of defendant's discriminatory practices two years prior to suit). To require that plaintiffs allege personal experiences of discrimination in all areas of defendant's operation would mean that only a large proportion of the class could properly represent the class; to require that plaintiff be employed by defendant at the time the class is determined rather than as of the time suit is filed would mean that no employee alleging discriminatory discharge could ever be a class representative. (Except for the narrow class of those discriminatorily discharged). We believe that plaintiffs have shown a recent enough and a broad enough experience with defendant's operations to sustain the conclusion that they will be fair and adequate representatives of the class.

### c. The named plaintiffs have not met the requirements of 23(b)(2).

■ Once plaintiffs have shown that their action qualifies as a class action under 23(a)(1–4), they must also show that it is appropriate for class action

treatment under 23(b)(1)(b)(2), or (b)(3). The plaintiffs in this case seek class certification under (b)(2), which states that an action may be maintained as a class action if:

" . . . the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . ."

In moving for certification under (b)(2) the plaintiffs here rely heavily on the proposition that "racial discrimination is by definition class discrimination", Hall v. Werthan Bag Co., 251 F. Supp. 184, 186 (M.D.Tenn.1966), and on those cases applying this proposition to justify (b)(2) certification in Title VII context. Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5th Cir. 1969); Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968); Paddison v. Fidelity Bank, 60 F.R.D. 695 (E.D.Pa.1973); Williams v. Local 19, Sheet Metal Workers, et al., 59 F.R.D. 49 (E.D.Pa.1973); Reyes v. Missouri-Kansas-Texas R.R. Co., 53 F.R.D. 293 (D.Kan.1971); Hall v. Werthan Bag, cited *supra*.

The reasoning behind this proposition is simple. (b)(2) certification requires that a defendant act on grounds generally applicable to the class; allegations of a policy of racial discrimination by definition concern action touching upon a wide group, since a series of actions would not be a policy unless they were consistent and numerous. As for the (b)(2) requirement that injunctive relief be appropriate "with respect to the class as a whole" the argument goes that even where a policy of discrimination has been shown in an individual action,

the court would grant an injunction prohibiting the defendant from discriminating against the members of the plaintiff's racial group.[3] Therefore, since group injunctive relief would be appropriate in a successful individual Title VII action, it is no less appropriate in a Title VII class action.

Defendant does not quibble with this reasoning; it attacks its very roots. It is defendant's contention that a class action is maintainable under (b)(2) only when it is admitted or established as fact that the party opposing the class has acted on grounds generally applicable to the class, and the only question for decision is whether or not that action is legal. Thus cases in which (b)(2) certification is proper, defendant urges, are those raising only issues of law.

Defendant acknowledges that there are cases with a contrary interpretation of (b)(2), but it attributes these to a confusion of the "common question of fact" standard of 23(a)(2) with the "grounds generally applicable" standard of (b)(2), an overbroad reading of the advisory committee's notes accompanying (b)(2), or inadequate briefing by previous defendants.

Defendant's contention is, upon first impression, persuasive. The full text of the advisory committee's notes concerning 23(b)(2) states:

"This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. Declaratory relief "corresponds" to injunctive relief when as a

---

**3.** This argument rests on the unlikelihood of a court's enjoining further racial discrimination against one individual but leaving the defendant free to discriminate against the other members of plaintiff's racial group. In other words, the right to be free from

racial discrimination in the terms of one's employment is seen by these authorities as a right which it would be impossible to vindicate without at the same time vindicating the rights of every member of the discrimination's target group.

practical matter it affords injunctive relief or serves as a basis for later injunctive relief. The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages. Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.

Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration. See Potts v. Flax, 313 F.2d 284 (5th Cir. 1963); Bailey v. Patterson, 323 F.2d 201 (5th Cir. 1963); cert. denied, 377 U.S. 972, [84 S.Ct. 1655, 12 L.Ed.2d 741] (1964); Brunson v. Board of Trustees of School District No. 1, Clarendon Cty., S.C., 311 F.2d 107 (4th Cir. 1962), cert. denied, 373 U.S. 933, [83 S.Ct. 1538, 10 L.Ed.2d 690] (1963); Green v. School Bd. of Roanoke, Va., 304 F.2d 118 (4th Cir. 1962); Orleans Parish School Bd. v. Bush, 242 F.2d 156 (5th Cir. 1957), cert. denied, 354 U.S. 921, [77 S.Ct. 1380, 1 L.Ed.2d 1436] (1957); Mannings v. Board of Public Inst. of Hillsborough County, Fla., 277 F.2d 370 (5th Cir. 1960); Northcross v. Board of Ed. of City of Memphis, 302 F.2d 818 (6th Cir. 1962), cert. denied, 370 U.S. 944, [82 S.Ct. 1586, 8 L.Ed.2d 810] (1962); Frasier v. Board of Trustees of Univ. of N.C., 134 F. Supp. 589 (M.D.N.C.1955, 3-judge court), aff'd, 350 U.S. 979, [76 S.Ct. 467, 100 L.Ed. 848] (1956)." 39 F.R.D. 102.

While the text of this note does not support defendant's assertion that (b)(2) covers only those situations where it is not factually disputed that the defendant acted on grounds generally applicable to the class, seven of the eight cases chosen as demonstrative of the proper application of (b)(2) were cases attacking *de jure* school segregation, a practice of unquestionable general application.[4]

However, defendants' interpretation of the advisory committee's notes would not only prevent (b)(2) class treatment for suits in which the question of whether the defendant acted on grounds generally applicable to the class is contested, but also those suits where defendant admits following a codified rule or practice but denies that it has a general, uniform effect on any class. Such a situation was presented in Rowe v. General Motors Corp., 457 F.2d 348 (5th Cir. 1972), where defendant admitted that a prospective applicant for promotion must be approved by his immediate foreman before he could be promoted, but denied that this practice resulted in racial discrimination. The *Rowe* court determined that a (b)(2) class certification was proper, a decision with which defendant agrees. (See Appendices to Brief of defendant, section c, p. 14). Yet in *Rowe* there remained to be litigated the question of whether the admitted practice uniformly and disproportionately affected the class of black employees. Admittedly, the factual questions raised by the present case are more complex then those in *Rowe,* since there is no codified practice or procedure to begin from. But the possible complexity of the factual issues does not alter the fact that final injunctive relief with respect to the class as a whole, the focus of concern in Section (b)(2), is no less appropriate whether it is a procedure which results in racial discrimination or a policy of racial discrimination which is made out. As observed above, defendants have deemed (b)(2) class

---

4. The eighth case was Brunson v. Board of Trustees, 311 F.2d 107 (4th Cir. 1962), where it was not clear from the record whether defendants admitted that they ran a segregated school system.

treatment appropriate when there exist factual questions as to the condemned practice's general applicability to the class; the degree of complexity which these factual questions may pose is relevant to the maintainability of a class action under 23(a)(2) or 23(b)(3) but not under 23(b)(2).

That the Advisory Committee did not intend that only situations in which the defendant admitted segregation were proper for (b)(2) treatment can be understood if the Committee's notes are put in their historical context. At the time the notes were written (1966) the landmark civil rights—class action cases were the school desegregation cases. Title VII was at that time less than two years old; the opinion of Judge Gray in Hall v. Werthan Bag Co., 251 F.Supp. 184 (M.D.Tenn.), which originated the doctrine that racial discrimination in employment was by definition class discrimination, was itself decided in 1966. Therefore, the Advisory Committee's citation of the school desegregation cases need not be taken to mean that (b)(2) class actions are only appropriate in that area, but merely a reflection of the fact that the legal challenges to racial discrimination were first brought against those institutions where white and black were visibly and undeniably separated.

d. *Under Title VII the right to bring a pattern and practice action is vested exclusively in the EEOC.*

Defendant claims that plaintiffs cannot mount a broad attack on policy of discrimination but can only litigate those limited manifestations of such a policy which may affect them personally. Defendant claims that this result is mandated by statute, decision, and sound judicial policy. The statute in question is 42 U.S.C. § 2000e–6(a), which authorizes the EEOC to bring suit where a 'pattern or practice' of racial discrimination is present in an employment practice. Defendant maintains that this vests exclusive authority to raise pattern or practice issues in the EEOC. The decision relied upon by defendant is McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which states that proof of a pattern and practice of discrimination would not in itself justify granting relief to an individual plaintiff, but is merely one method of proving that the particular act of which the private litigant complains was discriminatory. The policy advanced by defendant is the admirable policy of judicial restraint, which, it is insisted, should inhibit the courts from attempting to accomplish through Title VII class actions what the EEOC is much better equipped to do through pattern and practice suits.

The Supreme Courts' continued assertion of the importance of private actions to the enforcement of Title VII undercuts defendant's argument that such actions are restricted to redressing the individual litigant's injuries. In Alexander v. Gardner—Denver, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), a case decided subsequent to *Green*, the Court stated:

> . . . . although the 1972 amendment to the Title VII empowers the Commission to bring its own actions, the private right of action remains an essential means of obtaining judicial enforcement of Title VII [citation omitted]. In such cases, the private litigation *not only redresses his own injury but also vindicates the important congressional policy against discriminatory employment practices.* [emphasis supplied]. Hutchings v. United States Industries, Inc., 428 F.2d 303, 310 (5th Cir. 1970); Bowe v. Colgate-Palmolive Co., 416 F.2d 711 [715] (7th Cir. 1969); Jenkins v. United Gas Corporation, 400 F.2d 28, [33] (5th Cir. 1968). *See Also* Newman v. Piggie Park Enterprises, Inc. 390 U.S. 400, [402 , 88 S.Ct. 964, 966, 19 L.Ed.2d 1263] (1968).

Each of the cases cited with approval in this passage were broadly defined Ti-

tle VII class actions. Nor is there any conflict between *Green* and *Alexander,* since *Green* merely discusses the means by which a plaintiff, whether in an individual or a class Title VII action, can make a *prima facie* showing of unlawful discrimination. As for judicial restraint, while it is true that the EEOC suits such as the one which resulted in the consent decrees binding the nine largest steel companies may represent a more effective weapon against racial discrimination than the private class action approach, this Court would lack judicial restraint if its opinion as to the relative effectiveness of the two approaches led it to foreclose one approach in the face of Congress' determination that they should co-exist.

e. *The consent decrees entered into between defendants and the federal government bar a class in this suit.*

■ On April 12, 1974 several agencies of the federal government entered into a consent decree with the Steelworkers Union and most of the large steel companies, including defendant United States Steel, in settlement of a suit alleging racially discriminatory practices by the steel companies. United States ex al v. Allegheny-Ludlum et al. No. 74P33S, 63 F.R.D. 1 (N.D.Ala.). The decree provides for an injunction against any discrimination by defendants therein on the basis of race, and a wide-ranging reform of defendants' seniority and transfer policies. In addition, the decrees provide for an as yet unspecified amount of "back pay" damages to be paid to a particular category of employees should they be willing to waive all claims for past and present discrimination.

Defendants argue that the relief provided by the consent decrees moots this action, but this position is rejected by the Judge approving the consent decrees, who expressly observed that "the resolution in this forum of issues between the government and the defendants does not preclude additional—or even inconsistent —relief in favor of private parties in other litigation". Memorandum and Order dated June 7, 1974, United States v. Allegheny-Ludlum Industries, Inc. et al. Civil Action 74-P339S, 63 F.R.D. at p. 6. This Court might, if plaintiffs are successful on the merits, issue an injunction differing from the one consented to in Allegheny-Ludlum in the specifics of its scope or implementation.

■ Defendants also argue that the decrees' back pay/waiver provisions and their uncertain impact on plaintiffs' putative class prevent plaintiffs' claims from being typical of those of the whole class and create a conflict of interest between plaintiffs and the class, in that none of the named plaintiffs are eligible under the back pay provisions while an unknown number of the putative class members may be eligible. This Court could understand such an argument if the potential class representatives were eligible to waive their claims for back pay since plaintiffs' "dropping out" could seriously jeopardize the interests of the remaining class litigants. But where none of the named plaintiffs could thus remove themselves, there is little basis for defendants' position. Nor should this Court delay certification pending the completion of the waiver process, for although this would clear up some uncertainties as to the numerousness of the class it would not be faithful to Rule 23(c)(1) which requires that class determination be made as soon as practical after suit is filed. Moreover, delaying class certification would not solve all problems posed by the decrees since those putative members of the class who are eligible to sign the waivers would probably have to be notified of the pendency of this suit (and their tentative status in it) before the waivers could be considered valid.

f. *The Court should delay certification pending an adjudication of defendants' liability.*

■ Defendant cites Katz v. Carte Blanche Corp., 496 F.2d 747 (3rd Cir.

1974) and Nash v. Boeing Company, 63 F.R.D. 451 (E.D.Pa.1974), as indicating a new trend of withholding class determination until after the individual plaintiff has prevailed on the merits. However both these cases involved certifications under 23(b)(3), and the factors which were central in the above decisions—particularly the consideration of the superiority of the class action method—are not relevant to a (b)(2) certification.