Ruth TALIAFERRO et al.

v.

Vergil DYKSTRA et al.

Civ. A. No. 73–584–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Jan. 29, 1975.

Philip J. Hirschkop, John D. Grad, Alexandria, Va., for plaintiffs.

Walter H. Ryland, Asst. Atty. Gen. of Va., Richmond, Va., for defendants.

## MEMORANDUM

MEHRIGE, District Judge.

Plaintiffs in this action, females and former teachers at Virginia institutions of higher education, seek monetary and injunctive relief from alleged deprivations of constitutional rights arising during the course of their employment by said institutions. Jurisdiction is alleged pursuant to 42 U.S.C. §§ 1983 and 1985 and 28 U.S.C. §§ 1331, 1343 and 2201.

In its memorandum of March 6, 1974, the Court ruled on several aspects of defendants' motion to dismiss the complaint on the grounds that relief to all named plaintiffs was barred by the statute of limitations. While resolving this motion in favor of the other named plaintiffs, the Court at that time requested additional memoranda from counsel as to whether a complaint to the Office for Civil Rights (OCR) of the Department of Health, Education and Welfare (HEW), such as that filed by plaintiff Schotta on May 20, 1971, was Congressionally intended as an administrative remedy for the wrong she is alleged to have suffered and, in that regard, whether personal relief was available to plaintiff Schotta through that channel. Those memoranda have been received and the remainder of the motion is now ripe for disposition.

In direct response to the Court's previous inquiry, plaintiff Schotta asserts that complaints of discrimination to HEW, rather than being Congressionally intended, were contemplated under the mechanism established pursuant to Executive Order 11246 (September 24, 1965, 30 Fed.Reg. 12319), as amended by Executive Order 11375 (October 13, 1967, 32 Fed.Reg. 14303).[1] She contends that the Office of Federal Contract Compliance (OFCC) in the Department of Labor is charged with overall supervision over enforcement of the Order's provisions, that HEW is one of fifteen agencies selected by OFCC to insure compliance, and that HEW's jurisdiction includes complaints of discrimination by academic and non-academic employees of educational institutions. Plaintiff Schotta further alleges that when her complaint was filed in 1971, OCR was responsible, within HEW, for investigating and rectifying both individual and class complaints of discrimination.

With regard to the nature of the remedies available to her through this procedure, plaintiff Schotta suggests an examination of the enforcement mechanism provided in Subpart D of Executive Order 11246, Part II, indicates redress was available. She contends that the major weapons wielded by the Secretary of Labor and the compliance agencies to achieve nondiscrimination and affirmative action by federal contractors were the power to cancel, terminate and suspend federal contracts, pursuant to Section 209(a)(5), and the power to refer substantial or material violations to the Department of Justice for suit, pursuant to Section 209(a)(2). Plaintiff Schotta further suggests that it is the threat of contract termination and refer-

---

1. Executive Order 11246 prohibited racial discrimination by an employer having a contract with the federal government. Executive Order 11375 amended the previous order by including among its prohibitions discrimination on the basis of sex.

ral, not previously provided under precursor's of Executive Order 11246, as amended, which gives compliance agencies, such as HEW, the leverage necessary to fashion a remedy for individual complaints through the mechanism of Section 209(b), which states:

> Under rules and regulations prescribed by the Secretary of Labor, each contracting agency shall make reasonable efforts within a reasonable time limitation to secure compliance with the contract provisions of this Order by methods of conference, conciliation, mediation, and persuasion before proceedings shall be instituted under Subsection (a)(2) of this Section, or before a contract shall be cancelled or terminated in whole or in part under Subsection (a)(5) of this Section for failure of a contractor or subcontractor to comply with the contract provisions of this Order.

Plaintiff Schotta asserts that in her first contact with HEW concerning his complaint, her letter of May 24, 1971 to Dr. Eloise Severinson, Regional Director of OCR, she left no doubt that it was personal relief she was seeking when she stated that her "particular goals are: promotion to associate professor which was discriminatorily denied me, tenure which was discriminatorily denied me and back pay." She also submits numerous pieces of correspondence in which reference is made to her individual complaint and the fact that OCR was proceeding to review Virginia Polytechnic Institute (VPI) compliance with Executive Order 11246, as amended, at least in part on the basis of her complaint.[2]

Finally, plaintiff Schotta attaches to her memoranda a sworn affidavit from Ronald R. Gilliam, Deputy Regional Civil Rights Director of the Office for Civil Rights, Region III, HEW, in which he states that, as a part of his regular duties, he is involved in the investigation of sex discrimination complaints filed by female university employees against universities that receive federal funds. Noting that his office was still in the process of investigating plaintiff Schotta's complaint of May 20, 1971 against VPI, the affiant stated:

> Without reflecting on the merits of Dr. Schotta's claims, it is the aim of this office to seek, where appropriate, remedies including back pay, reinstatement, tenure, lost wages, interest, adjustment in salary, promotion, compliance expenses (legal fees), and guarantees concerning future treatment for those complainants who this office finds have suffered from institutions' employment practices in violation of . . . Executive Orders [11246 and 11375]. Should Dr. Schotta be found to have suffered discrimination on the basis of sex in violation of Executive Order [11246, as amended], this office will attempt by virtue of its contract compliance responsibilities to negotiate with the university in order to achieve appropriate relief for her grievances.

Defendants, responding to plaintiff Schotta's contention, argue that an individual complainant is not a party to any action taken by the Government under Executive Order 11246. They allege that Executive Order 11246 creates no obligation on the part of the Government to investigate a complaint and provides no mechanism giving an individual a right to proceed under its terms. Defendants contend, therefore, that Executive Order 11246 provides no individual remedy, although federal agencies have adopted regulations by which they receive the right to order conciliation on behalf of individuals.[3]

---

2. Plaintiff's Brief, Exhibits III, IVa, VIII, X, XIV and XXII.

3. Defendants also assert that Executive Order 11246 "states explicitly that individual remedies are to be pursued under applicable provisions of law." Defendants' Brief at 10. The Court, however, has been unable to locate any such express statement and can only surmise that defendants are referring to Section 209(a)(2) which permits the Secretary of Labor or the appropriate contract-

On the basis of the memoranda and evidence submitted therewith, the Court concludes that plaintiff Schotta's complaint to HEW was an available, albeit non-mandatory, administrative procedure for her to have followed to seek redress for the alleged discrimination she suffered through VPI's termination of her employment. There remains, however, the critical question with regard to defendants' motion to dismiss which is whether the filing of plaintiff Schotta's complaint with HEW tolled the statute of limitations applicable to her filing of the instant civil rights suit.

Historically, periods of limitations have on occasion been described as established to cut off rights, justifiable or not, which might otherwise be asserted and as requiring strict adherence by the judiciary. Kavanagh v. Noble, 332 U.S. 535, 539, 68 S.Ct. 235, 92 L.Ed. 150 (1947). In recent years, however, a marked preference has attached to the view that statutory limitations are primarily designed to assure fairness to defendants and that they "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Burnett v. New York Central R. Co., 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965), citing Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348–349, 64 S.Ct. 582, 88 L.Ed. 788 (1944). While this is, of course, not to suggest that a limitation period is to be lightly regarded, a judi-

cial power, which may be exercised under appropriate circumstances, clearly exists to toll statutes of limitations in federal courts. See American Pipe & Construction Co. v. Utah, 414 U.S. 538, 558, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Moreover, this authority has been exercised on a number of occasions where administrative remedies created by either the states,[4] congressional enactment,[5] or private contractual agreement [6] have been diligently pursued in a constructive effort to obtain a settlement prior to the institution of a federal suit.

In Mizell v. North Broward Hospital District, *supra,* plaintiff, a surgeon, alleged violations of his constitutional rights in the defendants' suspension of his surgical privileges nearly six years prior to the institution of his civil rights suit in 1967. During the interim period, however, plaintiff pursued state administrative and judicial review procedures challenging both his suspension and the defendants' refusal to grant him reinstatement. In remanding to the trial court for consideration of whether, under these circumstances, the statute of limitations was tolled as to the overt act of suspension in 1961, the Fifth Circuit offered this guidance:

Having in mind the salutary rule that under our system of federalism aggrieved persons should be encouraged to utilize state procedures before appealing to federal courts . . . , we are persuaded that in cases arising under the constitution or laws of the

ing agency to recommend to the Justice Department that, in certain cases, "appropriate proceedings be brought to enforce [contractual] provisions, including the enjoining, within the limitations of applicable law, of organizations, individuals, or groups who prevent . . . compliance with the provisions of this Order." This section does not, however, comport with the interpretation defendants have proposed.

4. Mizell v. North Broward Hospital District, 427 F.2d 468 (5th Cir. 1970).

5. Guerra v. Manchester Terminal Corp., 498 F.2d 641 (5th Cir. 1974); Macklin v. Spec-

tor Freight Systems, Inc., 156 U.S.App.D.C. 69, 478 F.2d 979 (1973); Boudreaux v. Baton Rouge Marine Contracting Co., 437 F.2d 1011 (5th Cir. 1970); Reynolds v. Daily Press, Inc., E.D.Va., 5 EPD ¶ 7991 (1972); Contra Johnson v. Railway Express Agency, Inc., 489 F.2d 525 (6 Cir. 1973), cert. granted, 417 U.S. 929, 94 S.Ct. 2639, 41 L.Ed.2d 232 (1974); Jenkins v. General Motors Corp., 354 F.Supp. 1040 (D.Del.1973).

6. Culpepper v. Reynolds Metals Co., 421 F.2d 888 (5th Cir. 1970).

United States, a federal rule on tolling a state statute of limitations (when applicable) should be observed, if such rule clearly carries out the intent of Congress or of the constitutional principle at stake. 427 F.2d at 474.

While *Mizell* was, in large measure, decided upon principles of federalism, the Fifth Circuit placed significance upon the fact that the results sought in both the previous state administrative and judicial proceedings and in plaintiff's federal action were identical to the extent he sought reinstatement of his privileges in the hospital. So, too, is the instant matter, since plaintiff Schotta seeks from this Court the same redress for alleged violations of her constitutional rights as those sought in her complaint to HEW.

Defendants, however, cite to the Court Ammlung v. City of Chester, 494 F.2d 811 (3d Cir. 1974), for the proposition that only state limitation and tolling provisions may be applied in an action brought pursuant to 42 U.S.C. § 1983. There, plaintiff-administratrix had filed two wrongful death and survival actions in the state courts, both of which had been dismissed on preliminary objections despite the state court's grant of leave to amend the complaints. Plaintiff thereafter filed a civil rights action under 42 U.S.C. §§ 1983, 1985 and 1988, alleging various constitutional violations. The district court dismissed the complaint on the ground that the action was barred by the applicable Pennsylvania statute of limitations. On appeal, the Third Circuit affirmed, stating, *inter alia*, that *Mizell* was distinguishable in that tolling may have been appropriate there, because Mizell's success in having his surgical privileges reinstated at the state level would have obviated the need for a civil rights action, whereas, in *Ammlung*, the previous state court tort actions could not have completely vindicated the constitutional violations alleged in plaintiff's § 1983 complaint.[7]

On this ground alone, the Court concludes *Ammlung* is distinguishable from the matter *sub judice*. Moreover, to the extent the Third Circuit failed to consider whether a federal tolling principle was necessary, under the circumstances, to avoid injustice, it is in conflict with both Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L. Ed.2d 192 (1966),[8] upon which the Third Circuit itself relied, and authority within this circuit. See Belton v. Traynor, 381 F.2d 82 (4th Cir. 1967).

Defendants argue, additionally, that were the Court to allow pursuit of an administrative remedy created by executive order to toll a state statute of limitations incorporated into federal law in the absence of a congressionally enacted limitation period, it would effectively be permitting the executive to supersede the laws that create the applicable statutory limitation. The Court would merely note, as it did in its previous memorandum of March 6, 1974, that the Supreme Court has clearly en-

---

7. The Third Circuit also questioned whether *Mizell* was sound law within the Fifth Circuit in view of the Court's refusal to fashion a federal tolling principle in Blair v. Page Aircraft Maintenance, Inc., 467 F.2d 815 (5th Cir. 1972), a suit seeking back pay for violations of reemployment rights pursuant to 50 U.S.C. App. § 459. This Court notes, however, that the Fifth Circuit continues to cite *Mizell* as authority for the power of a federal court to toll a statute of limitations in civil rights cases. See Guerra v. Manchester Terminal Corp., *supra*, at 649 n. 13.

8. In *Hoosier*, the Supreme Court found tolling inappropriate, distinguishing its earlier holding in Burnett v. New York Central R. Co., *supra*, on two grounds. First, the Court

stated that a tolling principle was necessary in *Burnett* to implement a national policy of a uniform time bar expressed by Congress in the limitations provision of the Federal Employers' Liability Act, whereas, in *Hoosier*, Section 301 of the Labor Management Relations Act, pursuant to which suit was brought, established no such policy of a uniform national limitations provision. The Court went on to note a second consideration, however, when it stated: "Moreover, unlike the plaintiff in *Burnett* who could no longer bring a timely federal action after the state court dismissed his complaint, the union here had a full three years to bring this lawsuit in federal court after the dismissal of the state court action." 383 U.S. at 708, 86 S.Ct. at 1115.

couraged the pursuit of proper federal administrative remedies where such are available. See Parisi v. Davidson, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972); McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). Moreover, any tolling principle the Court might frame would be an outgrowth of its implied authority to create procedural limitations, or exceptions thereto, where, as with 42 U.S.C. § 1983, no clear expression of congressional intent exists as to limitations of actions. Cf. Macklin v. Spector Freight Systems, Inc., *supra*, at 994 n. 30. Such a principle, however, would in no way rest upon or require a finding of executive authority to amend congressional or state legislative action.

Finally, the Court finds unpersuasive defendants' reliance upon a line of decisions by the Court of Claims, involving monetary claims against the government, for the existence of what defendants characterize as the well-established rule that pursuit of an administrative remedy tolls the statute of limitations only when the remedy is mandatory. O'Callahan v. United States, 451 F.2d 1390, 196 Ct.Cl. 556 (1971); Williams v. United States, 434 F.2d 1346, 193 Ct. Cl. 440 (1970); Steel Improvement & Forge Co. v. United States, 174 Ct.Cl. 24, 355 F.2d 627 (1966). As the District of Columbia Circuit has previously noted in rejecting this same argument with regard to the plaintiff's § 1981 claim in Macklin v. Spector Freight Systems, Inc., *supra*, "this rule, based upon a series of statutes with fixed limitations and fixed procedures for presentation of claims, should not, in our view, be applied mechanically to the situation before us." 478 F.2d at 994 n. 30.

In the matter at bar, the Court finds plaintiff Schotta began, even prior to the official termination of her employment by VPI on June 6, 1971, to pursue the only administrative remedy then available to her.[9] Moreover, throughout the ensuing nearly two-year period prior to instituting this action, she made numerous attempts to accelerate the investigation HEW had undertaken in response to her complaint. The Court also finds that the defendants were placed on notice of the investigation no later than November 8, 1971, the day on which defendants were furnished a copy of plaintiff Schotta's complaint upon the arrival of HEW's investigators on the campus. Finally, defendants do not allege nor does the Court find that they have been prejudiced in their defense of this action in any way as a result of plaintiff Schotta's delay in filing this action.

■ Therefore, while the Court does not find, as plaintiff suggests, that the running of the applicable Virginia statute of limitation [10] was tolled, as a matter of law, by any action on the part of the defendants in allegedly delaying the completion of HEW's investigation, see Va.Code Ann. § 8–33, the Court concludes that the policy of repose contained in the statutory limitation is, under these circumstances, outweighed by the interests of justice served by allowing plaintiff Schotta an adjudication of her rights. Accordingly, the Court will deny defendants' motion to dismiss on the grounds that plaintiff Schotta's complaint was barred by the statute of limitations.

■ Two final matters remain. First, plaintiffs have moved the Court to reconsider its prior ruling of March

9. It is undisputed that at the time plaintiff Schotta sought redress through HEW, Title VII of the Civil Rights Act of 1964 did not extend to her employer, nor did the Equal Pay Act or the National Labor Relations Act apply to her situation.

10. In view of the Court's findings, it is unnecessary to determine at this time whether the applicable Virginia statute of limitations is two years, under that part of the Code dealing with "every action for personal injuries," Va.Code Ann. § 8–24, see Almond v. Kent, 459 F.2d 200 (4th Cir. 1972), or one year under the recently enacted provision of § 8–24 dealing specifically with § 1983 suits.

6, 1974, granting defendants' motion to dismiss the named defendants in their official capacities. Since that ruling, this Court has held on two occasions that state officials sued in their official capacities are "persons" for purposes of 42 U.S.C. § 1983 equitable relief. Hogge v. Hedrick, 391 F.Supp. 91 (E. D.Va., 1974); Hirschkop v. Virginia State Bar Ass'n., No. 74–0243–R, Mem. decis. at 7–9 (E.D.Va., Jan. 7, 1975). Without reiterating the reasons previously stated in those decisions, the Court deems plaintiffs' motion well-taken and the Court will, therefore, vacate its order of March 6, 1974 to the extent defendants' motion to dismiss this action as to their official capacities was then granted.

Second, plaintiffs have moved for modification of the tentative class declaration, for purposes of discovery, granted by the Court in its order of March 6, 1974. Plaintiffs now allege the existence of at least two reports indicating the probable existence of sex discrimination at the College of William and Mary and suggest that these documents support their allegation of a continuing conspiracy between the Office of the Attorney General of Virginia, the College of William and Mary and, by inference, other institutions of higher learning within the Commonwealth of Virginia. While the Court does not believe these allegations are adequate to modify the class declaration to include all institutions of higher learning named as defendants in the original complaint, the Court concludes that the interests of justice will best be served by declaring the College of William and Mary and the officials therein as members of the tentative class of defendants for purposes of discovery. As previously stated, if in the course of discovery further facts are uncovered which support the claim of a more extensive conspiracy, the Court may at that time, upon proper motion, consider a broadening of the plaintiff and defendant classes for purposes of discovery in accord therewith.

An appropriate order will issue.